Ex Parte Scott KIMES.

No. 71564.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 24, 1993.

Douglas Tinker, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, Robert Huttash, State's Atty., Austin, for State.

## OPINION

CAMPBELL, Judge.

■ A jury convicted applicant Scott Kimes of murder for remuneration or the promise thereof, a capital offense under Texas Penal Code § 19.03(a)(3). The jury was unable to answer the second special issue; therefore, the trial court assessed punishment at life imprisonment. *See* Tex.Code Crim.Proc. art. 37.071(e) (1987). The Thirteenth Court of Appeals affirmed applicant's conviction. *Kimes v. State,* 740 S.W.2d 903 (Tex.App.—Corpus Christi 1987). We ordered applicant's post-conviction application for writ of habeas corpus [1] filed and set for submission to consider whether the prosecutor's failure to turn over evidence consisting of offense reports and accompanying witness affidavits naming the State's key witness as a suspect in the commission of the offenses outlined in the reports constituted a violation of applicant's right to due process of law under the Fourteenth Amendment to the United States Constitution.[2]

■ Applicant filed his writ application in the 214th District Court of Nueces County, the court in which he was convicted of capital murder. We received the application and ordered it set for submission. We then directed the convicting court to conduct an evidentiary hearing to give applicant an opportunity to prove allegations contained in his application, and instructed that court to make findings of fact. *See* Tex.Code Crim. Proc. art. 11.07, § 2(d). After receiving the trial court's initial findings of fact and conclusions of law, we directed the trial court to conduct a second evidentiary hearing to further develop the facts pertinent to applicant's case. The trial court held a second evidentiary hearing, and we have received the trial court's supplemented findings of fact and conclusions of law. Because the convicting court's findings of fact, in relevant part, are supported by the record, they will be accepted, in relevant part, by this Court as correct. *See Ex parte Adams,* 768 S.W.2d 281, 288 (Tex.Crim.App.1989). According to the trial court's findings and the record before us, the facts relevant to applicant's claim are as follows:

Prior to his trial, applicant filed a motion requesting production of exculpatory evidence pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). During the trial, the State's key witness, Anthony Shaw, testified that applicant had made a number of incriminating statements to him, including an outright solicitation to participate in the murder. The prosecutor's office received, prior to applicant's trial, police reports detailing certain felony offenses, including two burglaries and a sexual assault, and accompanying witness affidavits identifying Shaw as the suspect. The prosecutor failed to disclose these materials to applicant or his counsel.

1. See Article 11.07 of the Texas Code of Criminal Procedure.

2. The issue presented is one which this Court recognizes as cognizable in a post-conviction application for writ of habeas corpus. *Ex parte Adams,* 768 S.W.2d 281 (Tex.Crim.App.1989).

Anthony Shaw and applicant were roommates at the time of the murder. Shaw testified that applicant asked him to participate in the murder. Shaw testified that applicant "had an offer for a thousand dollars to kill somebody and he wanted me to participate in it." Shaw testified that applicant later made statements suggesting that the intended victim was Helga Berrott, who applicant was convicted of murdering. Shaw testified that when he returned to the apartment on the morning of August 20 and pulled his motorcycle next to applicant's motorcycle, he could "feel heat coming off of [applicant's motorcycle]." Shaw also testified that upon his return to their apartment early on the morning of August 20, 1986, the date of the murder, applicant told him, "[i]f anybody asks you why the bikes are warm, tell them we just went out to breakfast." Finally, Shaw testified that on the day after the murder, as applicant was moving out of the apartment, applicant told him, "[t]here's only three people that know about this: George,[3] me, and you."

In its findings of fact and conclusions of law, the trial court determined that the State had a duty to disclose the offense reports and accompanying witness affidavits to applicant. The court also found that "applicant and his attorney both had knowledge of the facts which were the subject matter of the offense reports that the State failed to disclose." Finally, the court found that the State delivered the offense reports and accompanying witness affidavits to Hendon's trial counsel at Hendon's separate trial at which Shaw also testified, that Hendon's trial counsel failed to utilize this evidence, that Hendon's trial counsel challenged Shaw's credibility with other evidence, and that "the jury convicted ... Hendon of capital murder in spite of the development of all of these challenges to ... Shaw's credibility." The trial court concluded: "Evaluating the omitted evidence in the context of the entire record, the court concludes that even if it had been disclosed [to applicant at his trial], the result of [his] trial would not have been different."

Applicant now argues that the offense reports and accompanying witness affidavits identifying Shaw as the suspect were exculpatory material under *Brady v. Maryland.* He asserts that the reports and affidavits were "of a discoverable nature and that [they were] exculpatory and went to the credibility of ... Shaw." Applicant's writ application fails to state explicitly what use he could have made of the offense reports and witness affidavits. He merely argues that the materials could have been used to attack Shaw's "credibility." From the record of the hearing held May 21, 1993 in the trial court, it appears that applicant envisions two avenues for impeaching Shaw's "credibility" with the offense reports and witness affidavits. First, applicant argued at the hearing that the offense reports and affidavits could have been used to show Shaw's bias in favor of the State, in that the jury could have inferred, after being presented with these materials, that Shaw was willing to cooperate with the State in exchange for leniency concerning the burglaries and rape. Second, applicant argued at the hearing that he could have used the materials to show that Shaw was "lying" when he testified against applicant.

▪▪▪ Under *Brady v. Maryland,* a prosecutor has an affirmative duty to turn over material, exculpatory evidence. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Impeachment evidence is included within the scope of the term "exculpatory evidence." *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Evidence withheld by a prosecutor is "material" if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. *Id.* at 682, 105 S.Ct. at 3383. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Thus, under *Bagley,* a due process violation has occurred if: 1) the prosecutor failed to disclose evidence; 2) the evidence is favorable to the defendant; and 3) the evidence is material, such that there is a reasonable probability that, had the evidence been disclosed to the

**3.** According to Shaw, applicant was referring to George Hendon, the alleged remunerator in the murder for remuneration scheme involving applicant.

defense, the outcome of the trial would have been different. *Id.; see also Thomas v. State,* 841 S.W.2d 399 (Tex.Crim.App.1992).

■ A prosecutor does not have a duty to turn over evidence that would be inadmissible at trial. *Iness v. State,* 606 S.W.2d 306, 310 (Tex.Crim.App.1980). Evidence offered by a party to show bias of an opposing witness should be excluded if that evidence has no legitimate tendency to show bias of the opposing witness.. *Galvan v. State,* 129 Tex.Crim. 349, 86 S.W.2d 228, 229–30 (App. 1935); *see also* 98 C.J.S. Witnesses § 568 (1957).[4]

■ A writ applicant has the burden of proving the facts which would entitle the applicant to relief. *Ex parte Maldonado,* 688 S.W.2d 114, 116 (Tex.Crim.App.1985). In this case, applicant must prove the three elements required under *Bagley* to show a due process violation resulting from the prosecutor's failure to turn over the offense reports and accompanying witness affidavits. Relying on the trial court's findings of fact, we conclude that prong one has been satisfied in this case, in that the prosecutor failed to turn over the offense reports and witness affidavits to applicant. Concerning prongs two and three of the *Bagley* analysis, we conclude that these elements have not been satisfied.

Nothing in the record indicates that Shaw was aware, prior to applicant's trial, that he was a suspect in the burglaries and rape. The record does not show that Shaw was arrested for these offenses, or that he was ever questioned about them by the police. The record is inconclusive as to the issue of Shaw's subjective knowledge of his status as a suspect. Therefore, applicant's argument that the offense reports and accompanying affidavits could have been used to impeach Shaw for bias is unpersuasive, given the absence in the record of any proof that Shaw knew of his status as a "suspect" in the commission of the burglaries and rape. The offense reports and witness affidavits have

no legitimate tendency to show that Shaw was biased in favor of the State.

Applicant also argues that he could have used the offense reports and witness affidavits to show that Shaw was "lying" when he testified at applicant's trial. The hearing record is unclear as to precisely how applicant would have used the materials to show that Shaw was "lying." Generally, the offense reports and witness affidavits would not have been admissible to show Shaw's capacity for truthfulness or untruthfulness. *See* TEX.R.CRIM.EVID. 608; H. Wendorf, et al., *Texas Rules of Evidence Manual* VI–42—VI–45 (1991). We are otherwise unable to evaluate fully applicant's argument, with respect to his intention of using the offense reports to show that Shaw was "lying" when he testified, due to its lack of clarity.

■ The trial court predicated its conclusion on its findings of fact concerning the Hendon trial. The trial court apparently based its determination, that the offense reports and accompanying witness affidavits were not material evidence under *Bagley,* on its findings that 1) the offense reports and witness affidavits were disclosed to Hendon; 2) Anthony Shaw's credibility was challenged in a variety of ways at the Hendon trial; and 3) Hendon was convicted in spite of 1) and 2).

The outcome of the Hendon trial is not relevant to an analysis of applicant's claims. Applicant's and Hendon's trials involved different defendants, different attorneys, and, most importantly, different juries. The trial court's analysis, in evaluating applicant's claims based on the outcome of the *Hendon* trial, was incorrect. The Hendon proceeding does not affect the materiality of the offense reports and witness affidavits with respect to applicant's trial. Applicant's and Hendon's trials were separate and distinct proceedings. We are not bound by the trial court's findings of fact or conclusions of law. *Ex parte Adams,* 768 S.W.2d 281, 288 (Tex.Crim.App. 1989). Although we agree with the result reached by the trial court, that the offense reports and accompanying witness affidavits

---

**4.** In *Galvan,* this Court held that a trial court's refusal to admit evidence offered by a defendant to show that State witnesses were biased against him did not constitute reversible error, because

there was no proof in the record that the State witnesses were aware of the facts underlying the bias asserted by the defendant.

did not constitute material evidence under *Bagley*, we reach this result via a different mode of analysis.

Applicant has failed to meet his burden of proving 1) that the offense reports and witness affidavits naming Shaw were favorable to him and 2) that there is a reasonable probability that the disclosure of these materials would have changed the outcome of his trial. The record is inconclusive as to Shaw's knowledge of his status as a suspect in the commission of the burglaries and rape. The prosecutor's duty to turn over the offense reports and accompanying witness affidavits is mitigated by the fact that these materials would not have been admissible to impeach Shaw at applicant's trial. *Iness* at 310; *Galvan*, 86 at 229–30. Therefore, we are unable to find a reasonable probability that the outcome of applicant's trial would have been different had the offense reports and witness affidavits been disclosed.

The request for relief is DENIED.

CLINTON, J., dissents.

MAHONEY, Judge, dissenting.

Believing the evidence at issue in this case to be admissible and material, I dissent. While I agree that in the absence of evidence that Shaw was aware of the charges, the subject matter of the reports and affidavits would not have been admissible to show bias, I cannot agree that the evidence would not have been admissible to show that Shaw was lying concerning the events that occurred on the morning of the offense for which applicant was convicted.

The offense reports at issue state that Shaw, the State's key witness, committed a sexual assault at approximately 5:30 a.m. and committed two burglaries in the same apartment complex sometime around 7:00 a.m. on August 20, 1986, the morning of the offense for which applicant was convicted. At appli-

cant's trial, Shaw testified that on the night of August 19th he attended an all-night video party at the house of a fellow employee. He testified that he left the party the next morning "when the sun was on the horizon" and went directly home. When he pulled up to his apartment, he testified he could feel heat on applicant's motorcycle. He further testified that when he went into the apartment he shared with applicant, applicant told him that "[i]f anybody asks you why the bikes are warm, tell them we just went out for breakfast." By contrast, at the punishment phase of applicant's trial and in the second evidentiary hearing on this writ application, applicant testified that Shaw came home on the morning of the 20th, woke applicant, and told him that he had just raped his ex-girlfriend and burglarized her home and another home, and instructed applicant that if anybody asked why his motorcycle was hot to say that they just got back from breakfast.[1]

The majority concludes that the reports would not have been admissible under Rule 608. I disagree. Rule 608, **Evidence of Character and Conduct,** provides as follows:

**(a) Opinion and reputation evidence of character.** The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

**(b) Specific instances of conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

---

1. The majority notes the trial court's finding that applicant and his attorney had knowledge of the facts which were the subject matter of the offense reports at issue. I would note the limited extent of such knowledge. At the second evidentiary hearing on this writ application, defense counsel testified that applicant had told him that "there was some information out there concerning some criminal charges." Applicant testified that although Shaw told him when he arrived in the apartment on the 20th that he had raped his ex-girlfriend and burglarized her apartment and one other, applicant did not know who the girlfriend was or where she lived until the offense reports were revealed.

A distinction can be drawn between evidence of specific acts offered to infer that a person who engages in conduct of a certain type is not credible and evidence of specific acts offered to show that the witness has actually made a misrepresentation on direct examination in the instant case. As stated by Judge Miller:

> As long as a party is *correcting a false impression made by a witness* I would allow that party, pursuant to Rule 607, to utilize for impeachment purposes a specific instance of the witness's conduct. Although Rule 607 does not expressly address this exception, I do not believe the enactment of the Rules of Criminal Evidence abolished it.

*Ramirez v. State,* 802 S.W.2d 674, 677 (Tex. Crim.App.1990) (Miller, J., concurring) (discussing applicability of Rules 608 and 607 to impeachment with evidence of specific acts); *accord* STEVEN GOODE, et al., 33 GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 608.1 at 418–19 (ed. 1988) (Rule 608 does not exclude evidence of specific acts for impeachment purposes when offered to rebut misleading statements made by the witness); *id.* at 142 (Supp.1992) (if purpose of inquiry is to rebut a misrepresentation made on direct examination the issue is not governed by Rule 608). I do not believe Rule 608 excludes evidence of specific conduct which directly rebuts or calls into question a statement made by the witness on direct examination.

That is the case here. Although the majority declines to consider the materiality of the reports because "the hearing record is unclear as to precisely how applicant would have used the materials to show that Shaw was 'lying' ", the impeachment value of the reports is obvious. The reports could have been offered to rebut a misrepresentation made by Shaw on direct examination. Shaw testified that he went home after the all-night video party, at which time he had a conversation with applicant. According to Shaw, applicant incriminated himself by ask-ing Shaw to provide an alibi for him. The reports at issue indicate that Shaw did not go directly home after the video party, but instead committed a sexual assault and burglaries sometime before going home. In addition, at the evidentiary hearing, defense counsel indicated that, if he had been in possession of the reports he would have called applicant at the guilt phase of trial to testify that it was Shaw who requested applicant to provide an alibi for him that morning.[2] Because the reports directly contradict Shaw's testimony, and call into question Shaw's testimony regarding the content of the conversation at the apartment on the morning in question, they would have been admissible for impeachment purposes to rebut statements made by Shaw on direct examination. *See Ramirez,* 802 S.W.2d at 677 (Miller, J., concurring); STEVEN GOODE, et al., 33 GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 608.1 at 418–19 (ed. 1988) & 142 (Supp.1992).

As the State's key witness, Shaw's credibility was significant. Evidence showing that Shaw lied about his whereabouts prior to arriving home on the morning in question would have led the jury to question his testimony against applicant, particularly his testimony concerning the content of the conversation he had with applicant on the morning in question. In my opinion, in view of the critical nature of Shaw's testimony, I believe there is a reasonable probability that, had the evidence of criminal allegations involving Shaw on the morning in question been disclosed to applicant for purposes of impeachment, the result of the proceeding would have been different. I would grant relief.

MILLER and BAIRD, JJ., join.

---

**2.** Without the offense reports to corroborate such testimony, it would not appeared credible for applicant to testify to virtually the opposite of what Shaw had testified to—that Shaw told him to make up an alibi regarding going out to break-fast. However, Shaw's testimony regarding that discussion would have had much less credibility if the reports had been offered together with applicant's testimony.