**Andre Phillip RAGAN, Appellant**

v.

**STATE of Texas, Appellee.**

**Nos. 04–93–00242–CR, 04–93–00243–CR.**

Court of Appeals of Texas,
San Antonio.

Sept. 14, 1994.

Nancy B. Barohn and John Fahle, Fahle & Fahle, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty. and Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before CHAPA, C.J., and LOPEZ and STONE, JJ.

## OPINION

LOPEZ, Justice.

Appellant has filed a motion in each appeal pursuant to Rule 2(b) of the Texas Rules of Appellate Procedure requesting that this court abate his appeals and remand these causes to the trial court for out-of-time motions for new trial. On May 2, 1994, we ordered the trial court to hold a hearing to allow appellant to demonstrate good cause for suspending Rule 31(a) of the Texas Rules of Appellate Procedure. We have now received the record from that hearing, as well as the trial court's findings of fact and conclusions of law. We have also received and considered appellant's objections to the court's findings of fact and conclusions of law. For reasons stated below, the motions to abate the appeals and for leave to file out-of-time motions for new trial are denied.

## I. EVIDENCE AT TRIAL

Appellant was convicted of the sexual assault of a cerebral palsy patient, A.Q., at an apartment complex where he was previously employed. The same night that A.Q. was assaulted, another woman in the same facility, C.O., was attacked. The morning after the assaults, A.Q. overheard two attendants talking about the attack on C.O. A.Q. immediately became hysterical and stated that she, too, had been attacked. She identified appellant, whom she had known from his

employment at the apartment complex, as the man who sexually assaulted her. A.Q. also identified appellant through a photo line-up and identified him at trial. An independent witness testified that he had seen appellant at the complex on the night of the offenses.[1]

A physical examination of A.Q. following the assault revealed a laceration in the lower vaginal area which was consistent with penile penetration. Vaginal swabs were taken and sent to the Bexar County Medical Examiner's Office for testing. Fred Zain, who conducted the testing on the swabs, did not testify at trial. Henry Hollyday, an employee of the forensic science center, simply read the results of the tests into evidence: "Semen was identified on the swabs. No semen or blood was identified on the panties." It was specifically stated that the report did not indicate whose semen was detected.

A jury convicted appellant of the sexual assault of A.Q. (appeal number 04–93–00243–CR). He thereafter pleaded guilty to the attempted sexual assault of C.O. (appeal number 04–93–00242–CR). That guilty plea was supported by a judicial confession.

## II. EVIDENCE AT GOOD CAUSE HEARING

Henry Hollyday testified that he retested the swabs at issue and reached the same conclusion as had Zain—that semen was detected. Hollyday had previously determined that A.Q. was a type–A secretor. Appellant introduced evidence that his blood was type B+, but he did not introduce any evidence showing whether or not he is a secretor. Hollyday performed an additional test on the swabs and identified the presence of O (or H) antigen.

## III. MOTION TO ABATE

Appellant's motions to abate are based primarily on two factors: (1) Fred Zain, whose work appellant characterizes as "inherently suspect," conducted the tests on the swabs.

---

1. Appellant asserts that this testimony is "irrelevant" because "of course he was seen at the complex, he worked there." This is a misstatement of the record. Appellant testified that he stopped working at the complex in November of 1991. The offenses at issue occurred in January 1992.

Appellant contends there was no other physical or scientific evidence introduced to show that appellant had sex on the night in question.[2]  (2) Appellant's defense was that the sexual assault never took place.  Appellant urged in his motions that A.Q. simply lodged a "me, too" complaint after she overheard discussion of the attempted sexual assault of C.O.  Appellant contends that the damage caused by Zain's report was that A.Q.'s complaint was "inherently suspect," yet supported by the report which showed that she "had at least had sex recently."

On the strength of the assertions in appellant's motions, we initially determined that "[t]he forensic evidence here at issue would appear to go to the heart of the State's case and certainly to the heart of appellant's defense—whether a sexual assault ever occurred."  We then concluded that appellant might establish good cause for abatement and remand for out-of-time motions for new trial.  Upon closer examination of the trial record and examination of the record from the hearing below, we now determine that good cause is lacking.

### IV.  IMPORT OF SEROLOGY EVIDENCE

We first note that appellant has seriously misstated the record by asserting that his defense was "that the rape never happened."  It is clear from the record that appellant's defense was that the sexual assault *did* happen, but that he was not the perpetrator.  For example, appellant testified that what happened to A.Q. was a "pretty horrible thing" and that he felt sorry for her.  Appellant's counsel argued to the jury that it was "quite a sorry thing what happened to [A.Q.]" but that it was "the defense's position . . . that Andre Ragan was not the guilty party."  He specifically stated, "I don't think she's lying that someone assaulted her.  There is no doubt about it.  She's not lying."  The essence of his argument was that A.Q. was simply mistaken in her identification of appellant.

The significance of appellant's misstatement of the record is that it completely changes the import of Fred Zain's report.  That report states simply that the swab samples taken from A.Q. tested positive for the presence of semen.  At best, this demonstrates that A.Q. had recently had sex, which lends support to the allegation that she had been sexually assaulted.  That allegation, however, was not contested at trial.  The only element contested at trial was the identity of the perpetrator.  Zain's report casts absolutely no light on that subject.  Thus, Zain's report is neither central to the State's case nor appellant's defense, as we were initially led to believe, nor was the report of any practical significance.

■  Appellant asserts in his motions that Zain's conclusions are incredible as a matter of law and that his conclusions on the issue of the presence of semen are particularly suspect.  Even assuming these assertions to be true, they do not amount to good cause for suspension of rule 31(a) in the present cases.  As stated above, the only import of Zain's report at trial was to demonstrate that A.Q. had sex recently.  Because this issue was not contested, appellant could not have been harmed regardless of whether the semen tests were accurately performed.  Again, the report had no bearing on the contested issue—identity.

### V.  *BRADY* VIOLATION

■  Appellant contends that the State had reason to know that Zain was fabricating evidence before appellant's trial, but failed to inform appellant of this misconduct.  *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  Appellant urges that, had he been given this information, he could have "vociferously attacked the conclusions in Zain's report, and perhaps raised a reasonable doubt in the jury's mind as to whether the complainant had been raped at all."  Again, whether the sexual assault occurred was not a contested matter at trial.  Whether it would have been contested had appellant been informed of Zain's

2.  Appellant does not mention the evidence from the hospital examination that A.Q. had a vaginal tear consistent with penile penetration.

alleged fabrications in other cases is a matter of speculation.

Finally, a claimed *Brady* violation is cognizable on post-conviction habeas corpus review. *Ex parte Kimes,* 872 S.W.2d 700 (Tex. Crim.App.1993).[3]

On the present record, we decline to hold that any failure to inform appellant of improprieties in testing procedures in other cases amounts to good cause to allow out-of-time motions for new trial in the present cases.

## VI. FALSIFIED EVIDENCE

■ Appellant also asserts that Zain may have falsified the test results in the present case. There is no evidence in our record to support this assertion, nor does it appear that appellant would be able to produce any such evidence upon a motion for new trial. Appellant acknowledges that Hollyday retested the swabs in the A.Q. case and obtained the same result as had Zain—that the presence of semen was detected. Appellant asserts, however, that Zain may have switched the swabs or "manufactured" evidence of semen to cover up the fact that he had either not done the test originally or had fabricated the original results. This is sheer speculation and does not in any manner demonstrate good cause for abating the present appeal.

In any event, appellant specifically asserts that Zain was a member of the prosecution team and that his knowledge of perjury is imputed to the State. Under these circumstances, appellant's claim is cognizable on post-conviction habeas corpus review. *See Ex parte Castellano,* 863 S.W.2d 476 (Tex. Crim.App.1993).[4]

## VII. NEWLY–DISCOVERED EVIDENCE

■ Appellant introduced "newly-discovered" evidence concerning his blood type at the good cause hearing, apparently to support a claim of factual innocence. He complains that the trial court did not even address this issue in its findings of fact and conclusions of law. This omission was most likely because the claim of newly-discovered evidence is not raised anywhere in appellant's motion to abate, which motion was the basis for the trial court's hearing. While we might also decline to address the issue, in the interest of judicial economy, we will consider it at this time.

As noted above, Hollyday testified that he detected H antigens on the swabs. A.Q. is a type–A secretor. Appellant is type B +, with unknown secretor status. Hollyday noted that it was unusual that there was no A antigen detected on the swabs, but concluded that the person who produced the semen "might have had type O blood and been an O secretor, *or might have been a non-secretor since the O antigen or the H antigen would be present also in the blood of [A.Q.] in the secretions from her."* [5] (Emphasis added.)

Appellant asserts that his blood type "doesn't match the rapist's." This is a highly misleading statement. Appellant's blood type does not match that detected on the swab, but the antigens detected thereon may have come from A.Q., not her assailant. If appellant is not a secretor then the fact that his type does not match that on the swab is of no significance. There certainly is no evidence in the record excluding appellant as the assailant. Indeed, Hollyday testified that no conclusions concerning whether appellant was included or excluded as the assailant could be drawn from the test results without further information. As stated by Hollyday:

[T]here is no way for me to make any sort of conclusion based on these reports of the blood-typing of Mr. Ragan without knowing the secretor status. And also, as I mentioned before, the results that I obtained that the blood type antigen of

---

**3.** Whether habeas review is available does not control the disposition of a motion to abate for an out-of-time motion for new trial. *See Tuffiash v. State,* 878 S.W.2d 197 (Tex.App.—San Antonio 1994, pet. ref'd) (supplemental opinion). It is, however, a factor to be considered. *See Harris v. State,* 818 S.W.2d 231, 233–34 (Tex.App.—San Antonio 1991, no pet.).

**4.** See footnote 3.

**5.** There is also evidence that nearly everyone possesses the H antigen.

[A.Q.], the H [sic] antigen was not present on the vaginal swab is a little bit unusual and may be indicative of some degradation of the vaginal swab over the approximately two-year period in between when the tests were done.[6] And so I believe more sensitive direct comparison tests would really be necessary, such as a DNA type analysis, before any sort of conclusion, either excluding or including Mr. [Ragan] could be reached by me.

While appellant's claim of newly-discovered evidence of factual innocence may or may not be cognizable on post-conviction habeas corpus review, *see State ex rel. Holmes v. Third Court of Appeals,* 885 S.W.2d 389 (Tex. Crim.App.1994), the evidence here presented is not such that the interests of justice demand allowing an out-of-time motion for new trial. The evidence is simply inconclusive. The blood-typing alone does not exclude appellant as the perpetrator or even raise a doubt as to the efficacy of the jury's verdict. In the face of A.Q.'s unequivocal testimony that appellant, who was known to her, was her assailant,[7] the evidence of appellant's blood type, without more, does not demonstrate good cause for abating these appeals and allowing out-of-time motions for new trial.

## VIII. CONCLUSION

For all the reasons stated above, appellant's motions to abate the appeals and for leave to file out-of-time motions for new trial are denied. The appeals are reinstated on the docket of this court.

---

6. Hollyday later testified that when A antigens (A.Q.'s type) degrade, they turn into H antigens (the type detected).

7. Appellant goes so far as to state that this direct, eyewitness evidence is "irrelevant." We disagree. Even if appellant were to produce evidence of his secretor status (and we note that there is no indication in the record that he is prepared to do so), A.Q.'s testimony is hardly "irrelevant." If appellant is not a secretor, then the test results remain inconclusive as to the identity of the assailant. If appellant is a secretor, he is not automatically excluded. Hollyday testified that the samples may have degrad-
ed. There is testimony that A antigens degrade to H, but there is no evidence concerning whether B antigens also degrade to H. If this is the case, the results are still inconclusive as to identity. If appellant is (1) a secretor and (2) there is no scientific explanation for the lack of his antigen on the swab other than that he is not the assailant, it appears that appellant would be excluded. There is no evidence in our record, though, to indicate either of these factors or to indicate that appellant would be able to produce evidence of these factors upon a motion for new trial. We are unwilling to grant appellant his requested relief on the basis of mere speculation.