Kissell v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-065-CR

     JACKIE LEE KISSELL,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 220th District Court
Hamilton County, Texas
Trial Court # 6685
                                                                                                    

O P I N I O N
                                                                                                    

      Jackie Lee Kissell was indicted on two counts of aggravated sexual assault and two counts of
injury to a child. See Tex. Penal Code Ann. §§ 22.021, 22.04 (Vernon 1994). A jury found
him not guilty of the aggravated charges but found him guilty on both counts of injury to a child. 
Kissell pleaded "true" to an enhancement paragraph, and the jury assessed punishment at eighteen
years in prison. 
      Kissell appeals on four points. He alleges that the evidence is insufficient to establish the
dates on which the incidents occurred and insufficient to establish the elements of the offense. He
also complains that his right to due process was violated by the State's failure to disclose a
supplemental offense report. Finally, Kissell asserts that the court abused its discretion in failing
to grant a continuance or a new trial based on the unavailability of two defense witnesses. We will
affirm the judgment.
      In his first point, Kissell complains that the evidence is insufficient to show that the offenses
occurred "on or about" the dates alleged in the indictments. In his second point, Kissell alleges
that the evidence is insufficient to establish the elements of the offense beyond a reasonable doubt. 
      The jury convicted Kissell of injury to a child by rubbing a hot pepper or its juice on the
buttocks or rectum of A.F., the five-year-old son of Kissell's girlfriend, Dorothy.


 One count
alleged that these acts occurred on or about August 15, 1993; the other count alleged the acts
occurred on or about September 15, 1993. Evidence will sustain a conviction if, viewing it in the
light most favorable to the verdict, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99
S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim.
App. 1991). 
      The State introduced into evidence a written statement given by Kissell on September 22,
1993. In his statement, Kissell states that his girlfriend's son, A.F., "always crapped in his
pants." According to Kissell, a neighbor told him that if he put hot peppers in A.F.'s mouth, the
child "would stop messing in his pants." When Kissell put hot peppers in A.F.'s mouth, the child
"bit a hole in his tongue." The same neighbor then told Kissell "about a week ago" to put the hot
peppers on the child's rectum. Kissell states, "I did hold [A.F.] down in the bathroom and rub
the peppers on his butt and opened his cheeks and rub the peppers on his rectum. [I] also squeezed
the juice on it."
      A.F.'s brother and sisters variously testified that they had moved to Hico in July of 1993, and
that the alleged acts had occurred in Hico. Kissell alleges that inconsistencies in the children's
testimony—about how many times the acts occurred, whether Kissell used whole or chopped
peppers, and whether he put the peppers "on" or "up" A.F.'s "butt"—render the evidence
insufficient to prove the dates of the offenses and the elements of the crime. We disagree.
      Kissell acknowledges that when a crime is alleged to have occurred "on or about" a certain
day, proof that the crime occurred on any date before the return of the indictment but within the
statute of limitations is sufficient to support a conviction. See Scoggan v. State, 799 S.W.2d 679,
680 n.3 (Tex. Crim. App. 1990). Kissell's statement of September 22 says that the neighbor had
told him "about a week before" to use hot peppers on the child's rectum. The children stated that
the acts occurred more than once and had occurred since they had moved to Hico in July 1993. 
The evidence is sufficient for a rational trier of fact to have found that the acts occurred "on or
about" the dates alleged. See id.


 
      As to Kissell's second point, the jury found him guilty of intentionally and knowingly causing
bodily injury to A.F., a child younger than fifteen and not his spouse, by rubbing a hot pepper or
its juice on the child's buttocks or rectum. See Tex. Penal Code Ann. § 22.04. As to the
elements of the offense, Kissell's statement establishes that he acted intentionally: "I did hold
[A.F.] down in the bathroom and rub the peppers on his butt and opened his cheeks and rub the
peppers on his rectum. [I] also squeezed the juice on it." Dr. Terry Springer, a medical doctor,
testified that if the juice of a hot pepper came in contact with the rectum, the pain would be "pretty
severe," thus establishing a bodily injury. A.F. testified that he was five years old and not the
spouse of Kissell. This evidence provides a sufficient basis for a rational trier of fact to find the
elements of injury to a child beyond a reasonable doubt. See Matson, 819 S.W.2d at 843. We
overrule points one and two.
      In his third point, Kissell complains that his right to due process under the Fourteenth
Amendment was violated when the State failed to disclose an offense report prepared by the
investigating officer for use in the trial of a co-defendant. Kissell was tried on January 25, 1994. 
Prior to trial, Kissell had filed a Motion for Disclosure of Favorable Evidence. The court granted
the motion, and the State provided him with two offense reports prepared by Gary Huddleston,
the investigating officer. After trial, Kissell discovered the existence of a "third" offense report
which had not been previously disclosed. 
      Kissell was allowed to file an out-of-time motion for new trial. At the hearing on the motion,
Huddleston identified the report in question as a "supplemental case report" that he had prepared
for the case against Dorothy, the victim's mother.


 Huddleston testified that he could not
remember when he prepared the questioned report, but that it was probably after Kissell's trial was
over or near the end of his trial. Huddleston explained that the authorities had "held off" filing
charges against Dorothy. However, either during or shortly after Kissell's trial, the district
attorney contacted him to proceed with charges against her. At that time, Huddleston wrote "from
memory" a brief summary of his investigation for the district attorney's use in Dorothy's case. 
Huddleston testified that the report in question was not prepared prior to Kissell's trial. He did
no additional investigation between the time he completed the first two offense reports and the
report in question. 
      Nancy Anglin, court-appointed counsel for Dorothy, testified that she first became aware of
the third offense report on April 13, when she discovered it attached to a post-sentence
investigative report.


 Anglin stated that, upon her discovery of the third report, Huddleston told
her that he had prepared it "sometime around the second indictment and trial."


 Anglin testified
that Dorothy was indicted for the second time in early January and arraigned on January 18. 
Thus, Kissell argues, the report was prepared prior to Kissell's late-January trial and should have
been disclosed.
      Kissell argues that inconsistencies between the supplemental report and the prior reports could
have been used to impeach Huddleston and to test the credibility of the child witnesses. 
Specifically, Kissell argues that the report in question states that M.F., the victim's eleven-year-old sister, told officers that her mother Dorothy was present when Kissell used the peppers on
A.F. However, at trial M.F. testified that her mother was not present during the incidents. 
Additionally, although a prior offense report stated that A.F. was "calm" when interviewed, the
subsequent report stated the child was "upset." Furthermore, the subsequent report contained
references to approximate times of day statements were taken when the prior reports did not.
      A prosecutor has an affirmative duty to turn over material, exculpatory evidence. Brady v.
Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Impeachment evidence is
included within the scope of the term "exculpatory evidence." United States v. Bagley, 473 U.S.
667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Evidence withheld by a prosecutor is
"material" if there is a reasonable probability that, had the evidence been disclosed to the defense,
the outcome of the proceeding would have been different. Id. at 682, 105 S.Ct. at 3383. A
"reasonable probability" is a probability sufficient to undermine confidence in the outcome of the
trial. Id. Thus, under Bagley, a due process violation has occurred if: (1) the prosecutor failed
to disclose evidence; (2) the evidence is favorable to the defendant; and (3) the evidence is
material, such that there is a reasonable probability that, had the evidence been disclosed to the
defense, the outcome of the trial would have been different. Id.; Ex parte Kimes, 872 S.W.2d
700, 702-03 (Tex. Crim. App. 1993).
      First, did the prosecutor fail to disclose evidence? Huddleston testified that he prepared the
written summary at the end of Kissell's trial or after his trial was completed. Second, was the
evidence favorable to the defendant? The alleged inconsistencies in M.F.'s statements relate to
whether Dorothy was present during the incidents. M.F.'s statements are consistent throughout
the offense reports that Kissell perpetrated the crime alleged. Furthermore, the arrest
affidavit—which the State had produced prior to Kissell's trial—stated that M.F. and her younger
sister had both stated to authorities that Dorothy "had participated and had knowledge of" the
incidents. Finally, is there a reasonable probability that, had the evidence been disclosed, the
outcome of the trial would have been different? Any inconsistencies in the children's statements
and whether A.F. was "upset" or "calm" must be taken in conjunction with the remaining evidence
at trial—namely, Kissell's own written statement that he had "rub[bed] the peppers on [A.F.'s]
butt and opened his cheeks and rub[bed] the peppers on his rectum . . . [and] also squeezed the
juice on it." 
      Even if we were to assume that the State failed to disclose the subsequent report, the
exculpatory nature of the evidence is tenuous at best. Furthermore, given the remainder of the
evidence at trial, we cannot say that the outcome of the trial would have been different. See id. 
Thus, the court did not abuse its discretion in refusing to grant a new trial. We overrule point
three.
      In his final point, Kissell complains that the court abused its discretion in failing to grant his
motion for continuance and motion for new trial based on the unavailability of two defense
witnesses. On Tuesday, January 18, the court held a pretrial hearing. The court inquired whether
the parties anticipated any witness problems. The State requested a "date certain" for trial,
because it needed to make arrangements to transport the complainant and his minor siblings from
Louisiana where they were living with their father. Defense counsel stated that she was having
subpoenas issued that afternoon, and that she did not anticipate any witness problems. Trial was
scheduled for Tuesday, January 25.
      On Friday, January 21, a jury was examined and impanelled. The following Monday
afternoon, Kissell filed and presented his motion for continuance. Kissell represented to the court
that, between 10:30 and 11:00 a.m. that morning, he had been informed that two very "critical"
and "material" defense witnesses—Buck Rush and Donna Handy—would be unable to attend
because of Rush's illness. Both witnesses were residents of Louisiana. Rush, Kissell's former
employer, was to have transported himself and Handy to Texas for trial.


 Rush had telephoned
Kissell's attorney that morning to say that he was too ill to travel. The nature and extent of Rush's
illness was not developed. The motion itself alleged that the testimony of the absent witnesses was
"material," involved "inconsistent statements" of the victim and his siblings, and involved "other
facts that would affect the credibility of such state witnesses." 
      The State objected to Kissell's motion, stating that Kissell had not complied with the
requirements to secure the attendance of out-of-state witnesses. The State further objected that it
had informed Kissell of its intention to send an assistant district attorney in a van to Louisiana to
pick up three of the children and bring them to testify. The Saturday before trial, Kissell had
asked the State to transport the fourth child as well, which the State agreed to do, but there was
no request that Rush or Hardy be transported. At the time the motion for continuance was heard,
the assistant district attorney was outside of Waco with six passengers in route to trial. Kissell's
attorney stated that she had subpoenaed these witnesses but—because they had agreed to
voluntarily appear and to avoid extra expense to the county—had not taken steps to have a
Louisiana court enforce the Texas subpoenas. Nothing was presented at the hearing as to the facts
about which the absent witnesses would testify nor to the materiality of their testimony. The court
denied Kissell's motion. 
      After trial, Kissell filed a motion for new trial asserting that the court had erred in overruling
his motion for continuance. The motion alleged that Handy's testimony would have impacted on
the children's credibility, and that Rush's testimony would have "allowed the jury to become
acquainted with [Kissell's] recent employment, intellect, and perhaps would have allowed the jury
to better assess the issue of [Kissell's] `intent to commit bodily injury.'" Attached to the motion
were affidavits of Handy and Rush. Handy's affidavit states that she knew Kissell, Dorothy, and
the children; that she had observed Kissell with small children; that he was not a mean person; and
that he would never intentionally or knowingly hurt a child. Her affidavit further stated that, on
two occasions, one or more of the victim's siblings had told her that Kissell had not put peppers
on A.F. In Hardy's opinion, the children were afraid of their natural father and were being
"manipulated" by him. 
      Rush's affidavit states that he had employed Kissell for more than a year; that Kissell had
lived with him and his wife in their home; that he would not hesitate to leave his children alone
with Kissell, even unsupervised; that Kissell is not a mean person; and that Kissell would not
intentionally or knowingly intend to injure a child. Rush's affidavit further states that Kissell's
intellect is somewhat limited, but that he is not a "bad person," and that if Kissell had put peppers
on the child's "butt," he "must have believed he was helping the child learn to control his bowel
movements rather than intending to hurt the child in any way." Rush's affidavit states that he had
planned to voluntarily appear for trial, but unexpectedly became ill and could not travel.
      Article 29.06 of the Code of Criminal Procedure sets forth the requirements of a defendant's
first motion for continuance on the grounds of an absent witness. Tex. Code Crim. Proc. Ann.
art. 29.06 (Vernon 1989). The defendant must show:
      •    the name and residence of the witness, if known;
      •    the diligence he used to procure the attendance of the absent witness; and it shall not be
considered sufficient cause to have a subpoena issued in cases where the law authorizes
an attachment to issue;
      •    the facts that are expected to be proved by the witness, and it must appear to the court
that they are material;
      •    the witness is not absent by the procurement or consent of the defendant;
      •    the motion is not made for delay; and
      •    there is no reasonable expectation that the witness's attendance can be secured during the
present term of court by postponement.
Id. 29.06(2). The truth of the motion, as well as the merits of the grounds set forth in it and its
sufficiency "shall be addressed to the sound discretion of the court . . . and shall not be granted
as a matter of right." Id. The granting of a motion for continuance is within the discretion of the
trial court. Cooks v. State, 844 S.W.2d 697, 725 (Tex. Crim. App. 1992), cert. denied, ___ U.S.
___, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).
      Article 24.28 provides for securing attendance of out-of-state witnesses. Tex. Code Crim.
Proc. Ann. art. 24.28, § 4 (Vernon 1989). If a person is a material witness in a criminal
prosecution, the Texas court may issue a certificate specifying the number of days the witness will
be required in court. Id. This certificate is then presented to a court of record in the county in
which the witness is found. Id. Witnesses summoned to trial must be compensated for their
attendance. Id.
      Kissell did not comply with the procedure in article 24.28, explaining that the witnesses had
said they would voluntarily appear. Although counsel had reviewed the procedure to subpoena
an out-of-state witness, she did not wish to incur unnecessary expense to the county.


 
      In holding that the court did not abuse its discretion, we do not mean that Kissell's failure to
follow the procedure in article 24.28—by itself—automatically validates the court's denial of a
motion for continuance. See Tex. Code Crim. Proc. Ann. art. 29.06(2). Rather, the totality of
the circumstances in this case indicate that the court did not abuse its discretion in denying
Kissell's motion for continuance and motion for new trial. Other than vague assertions in the
motion for continuance that the witnesses's testimony was "material," involved "inconsistent
statements," and "other facts that would affect the credibility" of the State's witnesses, there was
no showing of the facts that Kissell expected to be proved by the witnesses nor anything to make
it appear to the court that they were material. See id. art. 29.06(3). "Mere conclusions and
general averments are not sufficient for the court to determine their materiality, and the motion
for continuance must show on its face the materiality of the absent testimony." Casterline v. State,
736 S.W.2d 207, 209 (Tex. App.—Corpus Christi 1987, pet. ref'd). 
      The merits of a defendant's motion for continuance based on an absent witness are left to the
sound discretion of the court. Tex. Code Crim. Proc. Ann. art. 29.06(6); Cooks, 844 S.W.2d
at 725. Such a motion "shall not be granted as a matter of right." Tex. Code Crim. Proc. Ann.
art. 29.06(6). We do not find that the court abused its discretion in denying the motion for
continuance and subsequent motion for new trial.
       We overrule point four and affirm the judgment.
                                                                                 BILL VANCE
                                                                                 Justice
Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed December 28, 1994
Do not publish