Opinion filed February 2, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed February 2, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00218-CR 

 

                                                    __________

 

                                SHAD EDWARD LUVANO, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 42nd District Court

 

                                                          Taylor
County, Texas

 

                                                 Trial
Court Cause No. 21,112-A

 



 

                                                                   O
P I N I O N

 

The jury convicted Shad Edward Luvano of capital
murder.  Punishment was assessed at
life.  Appellant asserts that the trial
court erred in not allowing him to (1) test DNA samples collected by the State
at the crime scene and (2) collect and test a DNA sample of a witness.  We affirm.

                                                               Background
Facts

On March 9, 2003, the victim=s body was discovered in his Abilene
apartment.  A police investigation
determined that the victim was stabbed multiple times in the upper torso and
neck while sitting in his recliner. 








Appellant was identified as a suspect in the
crime.  The police located appellant and
his girlfriend Misty Rodriguez in Room 116 of the Century Lodge.  Rodriguez consented to a search of their
room.  The police discovered several
pieces of clothing during the search, including a pair of denim pants and a
white shirt both stained with blood.  DNA
testing indicated that the blood found on this clothing matched the victim=s DNA.

After taking appellant into custody, the police
interviewed Rosie Applin, who was staying in Room 112 of the Century
Lodge.  On the night of the murder, she
had loaned a sword to appellant. When she asked why he wanted to borrow the
sword, appellant told her that he was going to kill or Ashank@ somebody.[1]  When appellant returned to the Century Lodge
the next morning, Applin noticed that his jeans and shirt were bloody.  She also noticed that the sword, which
appellant returned to Applin, was covered in what looked like blood.  DNA testing indicated that the blood on the
sword belonged to the victim.

Detectives Jeff Bell and James David Atkins of the
Abilene Police Department interviewed appellant after his arrest.  Appellant called his mother during the
interview and told her that he killed the victim.  After talking to his mother, appellant
admitted to the detectives that he stabbed the victim because the victim
insulted his mother.  Appellant also
consented to a television interview during which he again confessed to killing
the victim.

The State charged appellant with capital
murder.  Rodriguez, although charged with
aggravated robbery,[2]
was not indicted in the capital murder case. 
Rodriguez was called to testify during the trial and asserted her Fifth
Amendment right against self-incrimination.

Appellant testified in his own defense.  Appellant first testified that he went with
Rodriguez to the victim=s
apartment to sell him swords and that an argument between himself and the
victim escalated into a fight.  Appellant
further testified that, during the fight, he stabbed the victim in the neck
with his pocketknife and that the stabbing was in response to the victim
choking him.  Appellant also testified
that Rodriguez was involved in the fight. 
Finally, appellant testified that he lied to the police about killing
the victim in order to protect Rodriguez. 









Dr. Marc Andrew Krouse, a medical examiner,
testified that the victim was stabbed or cut at least thirty-five times and
that several of the wounds would have caused death almost immediately,
including two wounds to the neck.  He
testified that the neck wounds could have been caused by a pocketknife but that
the chest wounds were caused by something else. 


Both the State and the defense called DNA experts
to testify. Constance Patton, the State=s
expert, testified that the blood on the murder weapon and on appellant=s clothing belonged to the victim.  Appellant=s
DNA expert, Dr. Rick Staub, concurred with the results of the State=s DNA testing.  Dr. Staub also testified that there was both
male and female DNA on the white shirt found in appellant=s motel room and that it was possible
that a female could have worn the shirt on the night of the murder.  Dr. Staub admitted, however, that there was
no way to determine when the shirt was worn by the female.  The State=s
DNA expert testified that the presence of female DNA on the shirt had little
evidentiary value because it would not indicate if the female was wearing the
shirt on the night of the offense.

Appellant filed a pretrial motion requesting
forensic DNA testing on twenty-nine samples collected by the police during the
investigation and also a motion to require Rodriguez to produce a DNA
sample.  The trial court denied both
motions.  On August 3, 2004, the day
after the trial began, appellant filed a subpoena duces tecum to collect
DNA from Rodriguez.  Counsel for
Rodriguez filed a motion to quash the subpoena. 
The trial court granted the motion to quash.  The trial resumed, and appellant was
convicted of capital murder.  This appeal
followed.              

                                                                 Issues
on Appeal

In appellant=s
first issue, he asserts that the trial court erred by refusing to allow
appellant=s
court-appointed expert to test the twenty-nine DNA samples collected by the
Abilene Police Department at the crime scene and related areas.  In appellant=s
second and third issues, he asserts that the trial court erred by denying his
motion to require Rodriguez to produce a DNA sample.  In appellant=s
fourth and fifth issues, he asserts that the trial court erred by quashing
appellant=s subpoena
duces tecum for a sample of Rodriguez=s
hair.

                                                The
Motion for Forensic DNA Testing








Appellant asserts initially that the trial court=s refusal to allow his court-appointed
expert   to test the twenty-nine DNA
samples collected by the Abilene Police Department from the crime scene and
related areas violated his right to due process under the Fourteenth Amendment
to the U.S. Constitution.

Prior to trial, appellant filed a Motion for
Forensic DNA Testing of Evidence Collected by the State.  The motion involved twenty-nine untested DNA
samples collected by the Abilene Police Department during the
investigation.  One of appellant=s theories during trial was that
Rodriguez stabbed the victim.  Appellant
asserts that it was essential for him to prove in some way that Rodriguez was
in the room where the victim died.

Motions for forensic DNA testing are authorized by
Tex. Code Crim. Proc. Ann. ch. 64
(Vernon Supp. 2005) and are usually not made until after a person has been
convicted of an offense.[3]  Because there is no provision in the Code of
Criminal Procedure authorizing such motions prior to conviction, we will treat
appellant=s motion
as a discovery request pursuant to Tex.
Code Crim Proc. Ann. art. 39.14 (Vernon Supp. 2005).

A defendant in a criminal case does not have a
general right to discovery of evidence in possession of the State.  Whitchurch v. State, 650 S.W.2d 422,
425 (Tex. Crim. App. 1983).  There is a
limited right to discovery pursuant to Article 39.14 which provides, in
relevant part, that the trial court may Aorder
the State before or during trial . . . to produce and permit the inspection . .
. of any . . . objects or tangible things not privileged, which constitute or
contain evidence material to any matter involved in the action and which are in
the possession, custody or control of the State or any of its agencies.@ 
An accused=s right
to discovery is within the sound discretion of the trial court.  Quinones v. State, 592 S.W.2d 933, 940
(Tex. Crim. App. 1980).  A trial court
abuses its discretion if it does not permit discovery of evidence that is
material to the defense of the accused.  See
McBride v. State, 838 S.W.2d 248, 250 (Tex. Crim. App. 1992).  








In determining materiality, omitted evidence must
be evaluated in the context of the entire record.  See Frank v. State, 558 S.W.2d 12, 14
(Tex. Crim. App. 1977).  Materiality
requires more than the mere possibility that the information might help the
defense or affect the outcome of the trial. 
See Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim. App.
2002).  Evidence is material only if
there is a reasonable probability that, had the evidence been disclosed to the
defense, the result of the proceeding would have been different.  Amos v. State, 819 S.W.2d 156, 159
(Tex. Crim. App. 1991).  A Areasonable probability@ is a probability sufficient to
undermine confidence in the outcome.  Ex
parte Kimes, 872 S.W.2d 700, 702 (Tex. Crim. App. 1993).

After reviewing the entire record, we do not
believe there is a reasonable probability that, had appellant been able to test
the DNA samples, the result of the proceeding would have been different.  Initially we note that it is unclear from the
record where the untested samples came from. 
Attached to appellant=s
motion was a report by Tammy McLean, a forensic specialist, who participated in
the crime scene investigation.  She
reported that the samples were taken from the victim=s
apartment and two bathrooms in the Century Lodge, but she did not specify where
exactly each untested sample came from.  

McLean reported that she processed a coke can and
a coffee cup from an end table by the couch; an ashtray, a wallet, and a day
planner from the coffee table; an empty pack of cigarettes; and a DVD
player.  However, the report does not
indicate if the untested DNA samples came from these items.  The untested samples may also have come from
the victim=s
kitchen, bathroom, the inside knob of the front door, and the stairs outside
the front door.  Nowhere in the report
are the untested samples matched with the specific areas in which they were
obtained.  The report also does not break
down how many untested samples were taken from the victim=s apartment and how many were taken
from the Century Lodge.  Without knowing
if the samples even came from inside the victim=s
apartment, it is impossible to conclude that DNA analysis would have confirmed
Rodriguez=s
presence there.  








Moreover, even if we assume each of the samples
did in fact come from inside the apartment and in close proximity to the
victim, the record does not support a finding of materiality because the
evidence of appellant=s
guilt was overwhelming.  The victim=s blood was found on appellant=s shirt and pants.  The victim=s
blood was also found on the handle wrapping of a sword that appellant had
borrowed on the night of the murder.  One
witness testified that appellant told her he was going to kill the victim, and
another witness testified that appellant said he was going to hurt the
victim.  Appellant confessed to stabbing
the victim to the police, to his mother, and to a television reporter.  There is also evidence in the record that he
confessed the crime to his ex-girlfriend.

DNA testing would not have contradicted this
evidence. At most, DNA testing might have proven that someone else was in the
victim=s
apartment at some point in time.  DNA
testing would not prove when the third person was in the apartment nor what he
or she was doing while there. 

Appellant contended during oral argument, however,
that confirmation of Rodriguez=s
presence in the room would bolster his credibility.  That alone does not make testing the DNA
evidence material to appellant=s
case.[4]  Materiality requires that the testing
directly impact the outcome as opposed to potentially providing helpful
information.  See United States v.
Agurs, 427 U.S. 97, 109-10 (1976)(AThe
mere possibility that an item of undisclosed information might have helped the
defense, or might have affected the outcome of the trial, does not establish >materiality=
in the constitutional sense@).  Appellant=s
first issue is overruled.

                              The
Motion to Require Rodriguez to Produce a DNA Sample

In appellant=s
second and third issues, he asserts that the trial court=s
denial of his motion to require Rodriguez to produce a DNA sample to compare
with the female DNA found on the white shirt with the victim=s blood violated his right to
compulsory process under the Sixth Amendment of the U.S. Constitution and
Article I, section 10 of the Texas Constitution.

The Sixth Amendment of the United States
Constitution provides in relevant part that, A[i]n
all criminal prosecutions, the accused shall enjoy the right . . . to have
compulsory process for obtaining witnesses in his favor.@  Similarly, Article I, section 10 of the Texas
Constitution provides that a defendant Ashall
have compulsory process for obtaining witnesses in his favor.@








The right to compulsory process is Athe right to present a defense, the
right to present the defendant=s
version of the facts as well as the prosecution=s
to the jury so it may decide where the truth lies.@  Coleman v. State, 966 S.W.2d 525, 527
(Tex. Crim. App. 1998).  It does not
guarantee, however, the right to secure evidence from any and all witnesses;
rather, compulsory process is guaranteed only for obtaining evidence that would
be both material and favorable to the defense. 
See id. at 527-28.  The
burden of proving materiality and favorableness is on the defendant.  See id. at 528.

Appellant has not met his
burden of proof.  If Rodriguez=s DNA was on the white shirt, this
could possibly be favorable to appellant=s
case; but we cannot conclude that it would be material.  The female DNA was not found on the murder
weapon nor was it found on the victim. 
It was found on a shirt seized by the police from a motel room appellant
and Rodriguez were sharing.  This shirt
could have been worn at any point in time prior to the night of the murder
because appellant and Rodriguez had an intimate relationship.   It is certainly conceivable that Rodriguez
could have worn appellant=s
shirt on more than one occasion. 
Therefore, even if testing revealed that the female DNA on the shirt
belonged to Rodriguez, it would not prove anything material to appellant=s case. 
The mere possibility that she wore the shirt at some point in time does
not necessarily implicate Rodriguez nor does it exculpate appellant.  Appellant=s
second and third issues are overruled.       
      The Subpoena Duces Tecum    

In appellant=s
fourth and fifth issues, he asserts that, by quashing his subpoena duces
tecum, the trial court violated Tex.
Code Crim. Proc. Ann. art. 24.02 (Vernon 1989) and the Sixth and
Fourteenth Amendments of the U.S. Constitution. 
Appellant=s
arguments concerning the Sixth and Fourteenth Amendments involve his
constitutional rights to due process and compulsory process.  As we have already explained, we do not
believe appellant=s rights
to due process and compulsory process were violated because the DNA evidence
was not material to appellant=s
case. 

We also do not believe Article 24.02 was
violated.  This statute provides that, A[i]f a witness have in his possession
any instrument of writing or other thing desired as evidence, the subpoena may
specify such evidence and direct that the witness bring the same with him and
produce it in court.@  A subpoena duces tecum is not to be
used as a discovery weapon but as an aid to discovery based upon a showing of
materiality and relevance.  Ealoms v.
State, 983 S.W.2d 853, 859 (Tex. App.CWaco
1998, pet. ref=d).  If a showing of materiality is not made, it
is proper for the trial court to quash the subpoena.  See Martin v. Darnell, 960 S.W.2d 838,
840-41 (Tex. App.CAmarillo
1997, no pet.).








As we have already explained, Rodriguez=s DNA was not material to appellant=s case because there is not a
reasonable probability that Rodriguez=s
DNA would have changed the outcome of the trial.  For that reason, we hold that the trial court
did not err in quashing the subpoena duces tecum.  We overrule appellant=s
fourth and fifth issues.

                                                                     Conclusion

Because the untested DNA samples and Rodriguez=s DNA were not material to appellant=s case, the trial court did not abuse
its discretion in denying appellant=s
motions and in quashing appellant=s
subpoena duces tecum.   

The judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

February 2, 2006

Publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











[1]Applin testified that Ashank@ means to cut or stab somebody. 





[2]The robbery charge arose from the theft of an Xbox and
other items from the victim=s apartment.  





[3]Chapter 64 refers repeatedly to the movant as Aa convicted person@ and to
the trial court to which the motion is submitted as Aa convicting court.@  See, e.g., Sections 64.01(a),
64.03(a).





[4]This conclusion is supported by the fact that the State
did not dispute that Rodriguez could have been present at the time of the
murder.  In fact, during its opening
argument, the State conceded she was probably present.