

IN THE
TENTH COURT OF APPEALS

No. 10-09-00164-CR

EX PARTE JOHNNY HOLLIS KING

From the 13th District Court
Navarro County, Texas
Trial Court No. 32,383-CR

MEMORANDUM  OPINION

Johnny Hollis King was indicted on ten counts of indecency with a child.  TEX. PENAL CODE ANN. § 21.11 (Vernon 2003).  His bail was set at $250,000.  King filed an application for a pretrial writ of habeas corpus seeking a reduction in his bail.  It was denied.  Because the trial court did not abuse its discretion, the trial court's order denying King's application for writ of habeas corpus is affirmed.

APPLICABLE LAW

Generally, a writ applicant has the burden of proving the facts which would entitle the applicant to relief.  *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993).  The same holds true for an applicant in a bail reduction proceeding.  *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980); *Ex parte Plumb*, 595 S.W.2d 544, 546 (Tex. Crim. App. 1980).  We review a trial court's decision in a bail reduction

proceeding for an abuse of discretion. *Holliman v. State*, 485 S.W.2d 912, 914 (Tex. Crim.

App. 1972).

In determining whether the trial court abused its discretion, we are guided by

Article 17.15 as to the rules for fixing bail. *Ex parte Pemberton*, 577 S.W.2d 266, 267 (Tex.

Crim. App. 1979). Article 17.15 provides:

> The amount of bail to be required in any case is to be regulated by the
> court, judge, magistrate or officer taking the bail; they are to be governed
> in the exercise of this discretion by the Constitution and by the following
> rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance
> that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an
> instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it
> was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken
> upon this point.
>
> 5. The future safety of a victim of the alleged offense and the
> community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (Vernon 2005).

The nature of the offense and the circumstances under which it was committed

are to be considered and this necessarily involves the punishment permitted by law.

*Holliman v. State*, 485 S.W.2d at 914. Also, the applicant's indigency is a circumstance to

be considered, but it is neither a controlling circumstance nor the sole criterion in

determining the amount of bail. *Ex parte Vasquez*, 558 S.W.2d 477, 480 (Tex. Crim. App.

1977). Other factors to be considered in determining the amount of bail, as interpreted

previously by this Court, include: family and community ties, work history, length of residence in the county, prior criminal record, conformity with conditions of prior bail, and any aggravating circumstances of the offense. *Ex parte Davis*, 147 S.W.3d 546, 548 (Tex. App.—Waco 2004, no pet.); *see Ex parte Rubac*, 611 S.W.2d 848 (Tex. Crim. App. 1981).

## THE RECORD

The trial court took notice of the indictment against King and the enhancement paragraphs contained within the indictment. The indictment reveals ten counts of indecency with a child, second degree felonies. Each count alleged that King engaged in sexual contact with a child (the same child in each count) under the age of 17 years. It was developed at the hearing that King lived with his girlfriend at the same address as the alleged victim during the time of the alleged assaults. The enhancement paragraphs show that King had been previously convicted of the felony offenses of possession of a controlled substance and delivery of a controlled substance. King testified at the hearing that he was also currently in jail for a charge of felon in possession of a firearm. If convicted of the ten counts of indecency with a child, and with the possibility of stacked sentences, King could face a two hundred year sentence even without consideration of the enhancement paragraphs.

King also testified at the hearing that he had lived in Navarro County "off and on" since 1992. He agreed that the rest of the time he has been in prison. He had no current residence in Navarro County. He lived with his girlfriend at the same address of the alleged victim at the time of his arrest. He had been in jail for 4 months at the

time of the hearing and planned on living with a girlfriend in Kerens, Navarro County if he was released. He was not sure of this girlfriend's address. King was dating her while also dating and living with his other girlfriend at whose address the offenses allegedly occurred.

King has no family in Navarro County. His mother lives in Dallas, his 17 year old son lives in Ennis, and some aunts and cousins live in Dallas and Kaufman Counties.

King also testified that he could not make bail set at $250,000. He had no money, except for $76, no land, and nothing valuable. If bail was lowered to $10,000, King stated that his mother would pay $500 and the bondsman would let King pay out the remaining portion of the required 10 percent of the bail. King stated that his mother was on a fixed income. Neither King's mother nor the bondsman testified. King promised that he would show up at his court settings if his bail was reduced to $10,000 and testified that when he had been released on bail for prior offenses, he appeared in court as required. The girlfriend King was going to live with testified that she would give up job interviews to allow King to use her vehicle to get to court.

King has very little work history. King stated that prior to his arrest he had a lawn service and had "some contracts." King acknowledged that he was not licensed in this line of work. He further explained that he only did little jobs around the neighborhood like mowing yards. He also acknowledged that he had not been paying taxes and had not "filed income tax" since about 1992 or 1993. King said his business was small. When he had his business, he used the truck of his girlfriend at the time. He

did not have a vehicle of his own. In the year preceding his arrest, King estimated that he made about $1,000 to $1,500 from his business.

King had no immediate prospects of employment if he was released on bail. King implied that if he was released, a week after his release, he would contact people for whom he was supposed to work prior to his arrest but did not get a chance to do so. He could only remember one name of a former and prospective customer. King admitted that he would have to borrow a vehicle and try to obtain some lawn equipment. He did not know how he was going to do that. When his current girlfriend took the stand, she offered a vehicle for King that both she and her father used and her father's lawn equipment. Her father did not testify. King ultimately acknowledged that he did not really have any plans for employment, just a hope.

## CONCLUSION

Considering all of the factors and the record in this case, we cannot say that the trial court abused its discretion in refusing to reduce King's bail.

Accordingly, King's sole issue is overruled and the trial court's order is affirmed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
 Justice Reyna, and
 Justice Davis
Affirmed
Opinion delivered and filed August 19, 2009
Do not publish
[CRPM]