**Claudis Joe LATSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–85–0812–CR.**

Court of Appeals of Texas, Houston (1 Dist.).

May 29, 1986.

John F. Hirling, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Linda A. West, Harris County Asst. Dist. Atty., Houston, for appellee.

Before COHEN, SAM BASS and DUNN, JJ.

## OPINION

COHEN, Justice.

A jury found appellant guilty of robbery. Appellant pled true to one prior felony conviction, and the court assessed his punishment at 35 years confinement. Appellant contends that the evidence was insufficient, because there was no showing that the complainant was known by the name alleged in the indictment, and the complainant's name as proved at trial was not *idem sonans* with the name alleged in the indictment. Appellant also contends that the court should have granted his motion to dismiss for failure to comply with the Speedy Trial Act and his motion for mistrial based on the complainant's inadmissible testimony about an illegal lineup identification. Further, appellant contends that the trial court had no authority to make a finding of the date of the offense, and requests this Court to delete the date of the offense from the judgment.

We first address appellant's contention that there was a fatal variance in the State's allegations and proof because the indictment alleged that the complainant was "Tai Thanh Nuynh," and at trial the State proved that the complainant was named "Tai Huynh." The State argues that the names are *idem sonans* or that the misspelling was a harmless typographical error. Mr. Huynh was Vietnamese,

spoke little English, and testified through an interpreter.

The State must prove that the victim's name is the same as the name alleged in the indictment. If the victim's name is spelled differently from that alleged, and the victim is not also known by the name in the indictment, the proof will be insufficient unless the name alleged and the name proved are commonly pronounced the same, or if an attentive ear has difficulty in distinguishing between them. *Cox v. State*, 608 S.W.2d 219, 219–20 (Tex.Crim. App.1980). Reversal will follow if the evidence shows that the names are patently incapable of being sounded the same or that the accused was misled to his prejudice, and a corresponding objection was made at trial. *Flanagan v. State*, 620 S.W.2d 591, 594, 597 (Tex.Crim.App.1981).

Appellant does not contend that he was misled to his prejudice. In fact, his motion to suppress identification, filed four months before trial, spelled Huynh's last name correctly. The trend of our criminal law appears to be away from reversals where no harm was shown. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984); *Adams v. State*, 707 S.W.2d 900 (Tex.Crim. App.1986); *Santana v. State*, 714 S.W.2d 1 (Tex.Crim.App.1986).

Appellant objected based on the dissimilarity of the names, whereupon the court, out of the jury's presence, heard evidence from the Vietnamese interpreter.

After listening to the interpreter pronounce both names, the trial judge said, "They sound almost exactly the same to me." Later, he said, "It is exactly the same, except for the first consonant." The phonetic spellings in the record are "Nueen" and "Whueen," but there was much discussion describing sounds the interpreter was making.

In *Martin v. State*, 541 S.W.2d 605, 607 (Tex.Crim.App.1976), the Court said:

> The [idem sonans] rule depends for its application on the intricacies and foibles of articulated speech; its application

must suffer the consequences of accents, dialects, and the peculiarities of localized or personalized pronunciations. It is difficult in the preparation of an appellate record for a court reporter to accurately describe on a printed page the nuances of sound in a witness's articulation of a name. Even on those occasions when a witness is asked to sound out a name phonetically, it is not easy to capture on paper the accent with which the witness spoke.

This task is even more difficult in the case of a foreign language. Therefore, we decline to find, based on a "cold record," that the trial judge, who heard the words spoken and the intonations used, abused his discretion in concluding that the names sounded "almost exactly the same." If Appellant desired to challenge the judge's ruling, he could have requested an instruction that the jury acquit him unless it found beyond a reasonable doubt that the names were pronounced the same way. No such instruction was sought.

The first and second grounds of error are overruled.

Appellant next contends that the trial court erred in failing to grant his motion to dismiss pursuant to the Speedy Trial Act. Under Tex.Code of Crim.P.Ann. art. 32A.02, §§ 1(1), 2(a) (Vernon Supp.1986), the State had to be ready for trial within 120 days of appellant's arrest on February 28, 1985, i.e., by June 28, 1985.

Appellant was indicted for aggravated robbery on March 26, 1985, and the State announced ready on March 29, 1985. The case was dismissed after the prosecutor learned that no weapon was exhibited in the offense. A robbery indictment (the instant case) was filed on June 20, 1985, and the State announced ready on June 24, 1985. No evidence was presented showing that the State was not ready within 120 days of appellant's arrest. Appellant failed to meet his burden of proof. *Scott v. State*, 634 S.W.2d 853, 855 (Tex.Crim.App. 1982).

The third ground of error is overruled.

Appellant's fourth ground of error asserts:

"The trial court committed reversible error in failing to grant appellant's motion for mistrial, where the complainant used his identification of the appellant in a defective lineup in order to identify appellant in court."

Appellant does not argue that the complainant's in-court identification was inadmissible because it was tainted by an earlier defective lineup. Instead, he argues that the complainant's testimony that he picked appellant out of an illegal lineup was inadmissible. The court sustained appellant's objection to the subject testimony and instructed the jury to disregard it, but denied his motion for mistrial. This did not cure the harm, he claims, as shown by the jury's question, during guilt deliberations, whether the complainant picked appellant out of a lineup, and the testimony of four jurors at the motion for new trial hearing that the lineup testimony was an "important" factor or "the" factor in their determination of guilt.

The complainant testified as follows:

Q. Mr. Huynh, is it not a fact that yesterday while under oath, seated where you are seated right now, in response to a question, "is this man sitting next to me, Claudis Joe Latson, the same person who robbed you on February 2, 1985," that you answered that you were not sure?

A. No. Through the picture, I identified him when I identified him at the police station.

Failure to grant a mistrial could not be grounds for reversal if the evidence to which appellant objected was properly admissible. Neither appellant's general objection nor the court's remarks granting it state grounds for excluding the evidence. Appellant suggests three possible grounds for holding that testimony about the lineup identification was inadmissible.

■ The first possible ground is that appellant was denied his right to counsel at the lineup. Appellant has no right to counsel at a lineup conducted before he was charged with a crime. *Rudd v. State*, 616 S.W.2d 623, 624 (Tex.Crim.App.1981). Appellant was not charged with a crime at the time of the lineup. Further, the police called appellant's lawyer, who was retained before charges were filed, on the day of the lineup, but he did not attend. There was no denial of counsel.

■ Second, appellant contends the lineup was impermissibly suggestive, but suggests no particular way in which it was suggestive. Neither due process nor common sense requires individuals in a lineup to be identical. *Buxton v. State*, 699 S.W.2d 212, 216 (Tex.Crim.App.1985). A lineup is not impermissibly suggestive merely because the heights range from 5'9" to 6'2", or the weights range from 170 pounds to 210 pounds, or the skin tones of black subjects vary. *Id.* In the present case, appellant weighed 150 pounds. The other weights were 135, 160, 170, and 190. Appellant is 5'9" tall. The other heights were 5'8", 6'2", 5'11", and 5'10", respectively. Appellant was 36 years old. The other ages were 24, 34, 18, and 25, respectively. The police lieutenant who worked the lineup testified that those in the lineup looked similar in age. The photograph of the lineup in the record shows nothing suggestive. This argument has no merit.

■ Third, appellant contends that the lineup was the product of an illegal arrest. Appellant was arrested without a warrant on the day of the lineup, February 28, 1985.

There was a pre-trial hearing in this case on August 12, 1985, and appellant's motion to suppress identification alleged only that he was denied the Sixth Amendment right to counsel at the lineup. No claim was made in the motion that the lineup was the product of an illegal arrest. This claim was not made in any motion in the record before us, nor when appellant objected and moved for mistrial. When appellant argued the illegality of his arrest at the August 12th suppression hearing, the court responded that nothing was before him concerning an illegal arrest. *See* Tex.Code Crim.P.Ann. art. 28.01, sec. 2 (Vernon

Supp.1986). The next day appellant obtained the court's permission to file a motion "to suppress the illegal arrest." No testimony was heard on the motion; it was never ruled on; and it is not included in the appellate record, which was approved by the court without objection by appellant. The complaint now made on appeal was not the subject of an objection and a ruling adverse to appellant in the trial court.

Further, just after the complainant testified as set out above, he again asserted that he identified appellant at a lineup. Appellant objected that the answer was nonresponsive, and the court overruled the objection. No complaint is made on appeal concerning this ruling. Thus, the same evidence now complained of was later admitted, over objection, and the ruling on the latter objection has not been brought forward as a ground of error.

For these reasons, we hold that any complaint that Huynh's testimony about the lineup was the fruit of an illegal arrest has been waived.

The fourth ground of error is overruled.

 Appellant finally contends that because the jury determined his guilt, the trial court lacked authority to make a finding in the judgment of the date the offense was committed. He argues that only the jury could properly make this finding because the jury is the exclusive judge of the facts, Tex.Code Crim.P.Ann. art. 36.13 (Vernon 1981), and that the jury was never charged on this issue, nor required to make a finding on it. Although the uncontroverted evidence showed that the offense occurred on February 2, 1985, as the judgment recites, appellant requests that this information be deleted from the judgment. He further argues that the jury's finding of "guilty of robbery as charged in the indictment" cannot be construed as a finding on the date of the offense, because the indictment alleged that the offense occurred "on or about February 2, 1985."

Appellant would compare a finding of the offense date with a finding of the use of a "deadly weapon," pursuant to Tex.Code Crim.P.Ann. art. 42.12, sec. 3g(a)(2) (Vernon Supp.1986). He argues that only the jury may make a determination on the use of a deadly weapon; however, when the court is the trier of fact at the punishment stage, and has evidence on the issue before it, the court may make an affirmative deadly weapon finding if the matter has not already been determined by the jury. *Fann v. State*, 702 S.W.2d 602, 604–05 (Tex.Crim.App.1985) (op. on reh'g). The court was the finder of fact at the punishment stage of the present case, and the evidence was uncontroverted. We hold that the trial court had authority to enter the date of the offense on the judgment.

The fifth ground of error is overruled.

The judgment is affirmed.