Alan Wade JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–94–00056–CR.

Court of Appeals of Texas, El Paso.

March 16, 1995.

Discretionary Review Refused Sept. 13, 1995.

John Gates, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for state/appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

Alan Wade Johnson appeals his conviction for the offense of aggravated robbery. An El Paso County grand jury indicted Appellant for the offense as enhanced by prior felony convictions, to which indicted offense he pled not guilty. After a change of venue, a Travis County jury found Appellant guilty and assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a life term, whereupon the trial court entered judgment in accordance with the jury's verdict. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

On October 21, 1990, between 9:00 and 10:00 a.m., Appellant robbed a Pizza Hut restaurant located in a suburban area of El

Paso's east side. The restaurant was closed at the time, and Appellant gained access by claiming he had left his sunglasses in the store. Once the manager opened the door, Appellant pushed his way inside and held the manager at bay by brandishing a firearm. Appellant took money from the store safe. He then instructed the manager to kneel, pressed the muzzle of the gun to the base of the manager's neck, and instructed him to turn over his wallet. He warned the manager not to identify him in the future because, having perused the wallet, he knew the manager's address and could find him easily.

Appellant was indicted for this offense on May 21, 1991, in cause number 61331. On the same date, Appellant was indicted for another robbery offense in cause number 61330. On August 29, 1991, he was indicted for an unrelated capital murder offense that was originally assigned the cause number 62189, but was later dismissed and reindicted into cause number 62384. The capital murder case was first set for trial on March 16, 1992, and eventually proceeded to trial on its sixth setting on October 4, 1993. Trial in the instant case began on February 7, 1994.

On September 2, 1993, Appellant filed a motion to dismiss cause numbers 61330 and 61331, claiming that he had been denied a speedy trial. A hearing on the motion was held on September 9, 1993, at which Appellant testified that his alibi witness had died while he was awaiting trial. He produced an Oklahoma death certificate that he claimed evinced his alibi's death. He also introduced into evidence three letters he claimed to have mailed to the District Attorney's office on three separate dates. The letters urge the office to proceed to trial and at least one warns of his alibi's deteriorating health. Appellant conceded that he never contacted the court in an effort to obtain a speedy trial. The State produced various witnesses who testified that neither the District Attorney's office nor the trial court ever received the letters.

The trial court denied the motion in a written order. The order recites that the trial court gives priority to capital cases when allocating trial settings. Although the order refused to find whether the disputed letters were actually sent to the District Attorney's office, it found that the office was under no obligation to communicate directly with Appellant because he was represented by counsel at all relevant times. Appellant never filed a motion for speedy trial in any of the three causes.

## II. *DISCUSSION*

Appellant attacks his conviction in five points of error. In his first point of error, Appellant claims he was denied a speedy trial in violation of the United States and Texas Constitutions. The framework for Sixth Amendment speedy trial analysis was set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. *Emery v. State*, 881 S.W.2d 702, 708 (Tex.Crim.App.1994). No definite period of time has been held to be a *per se* violation of a defendant's right to a speedy trial; alleged violations are considered on a case by case basis. *Emery v. State*, 881 S.W.2d at 708 (citing *Barker v. Wingo*, 407 U.S. at 529–30, 92 S.Ct. at 2191). When conducting the *Barker v. Wingo* balancing test, the reviewing court must consider four factors:

(1) the length of the delay;

(2) the reason for the delay;

(3) whether the defendant asserted his speedy trial rights; and

(4) any resulting prejudice to the defendant.

*Emery v. State*, 881 S.W.2d at 708 (citing *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2191). None of the four factors alone is a necessary or sufficient condition to finding a deprivation of the right to a speedy trial. *See Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193.

The record in the instant case demonstrates that Appellant has waived any error with respect to his speedy trial claim. The parties engage in protracted debate about the requirements for asserting the speedy trial right and the extent to which Appellant's alleged correspondence with the District Attorney's office complied with them. The testimony of Appellant's trial counsel at the hearing on the motion to dismiss, howev-

er, reveals that Appellant's letters were part of a larger scheme by which Appellant deliberately elected not to seek a speedy trial as a form of relief while attempting to preserve a speedy trial claim for the sole purpose of supporting a later motion to dismiss.[1]

A criminal defendant's constitutional right to a speedy trial is secure when he is provided a speedy trial. The most direct path by which to obtain a speedy trial is by filing a motion that prays for a speedy trial as relief. Appellant never filed a motion for speedy trial. By admitting that he voluntarily decided not to file such a motion because he simply had no interest in actually obtaining a speedy trial as a form of relief, Appellant effectively waived his speedy trial claim. Trial counsel's statement that he "was not going to assert a speedy trial claim until ... [Appellant] had, in fact, been deprived of a speedy trial," reflects an unambiguous intent to bring about the very deprivation of which he now complains. Such naked and affirmative disinterest in a constitutional right constitutes a waiver of that right. *Cf. Capistran v. State,* 759 S.W.2d 121 (Tex.Crim.App.1982) (defining waiver as intentional relinquishment of a known right); *Linder v. State,* 828 S.W.2d 290, 301 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) ("An accused may not invite error and then complain thereof."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1850, 123 L.Ed.2d 474 (1993).

The constitutional right to a speedy trial exists to ensure speedy trials, not to create an opportunity for a criminal defendant to have his case dismissed by voluntarily accepting delay and then strategically asserting the right and relying on the very delay he purposefully endured.[2] When a criminal defendant invites the delay made the basis of a speedy trial complaint, any resulting denial of constitutional rights is directly attributable to him. Appellant's first point of error is overruled.

In his second point of error, Appellant asserts that if his speedy trial claim fails because of his failure to file a motion for speedy trial or to preserve the testimony of the witness he claims died, then such failure denied him the effective assistance of counsel. The United States Supreme Court has created a two-part analysis to judge any claim of ineffectiveness of counsel. First, trial counsel's performance must have been deficient under prevailing professional norms; second, there must have been a reasonable probability that but for the deficiencies, the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). To successfully demonstrate the denial of effective assistance of counsel Appellant must establish that his counsel's performance was deficient and that the deficiency was so serious that he was deprived of a fair trial, meaning a trial whose

---

1. Appellant's trial counsel testified as follows:
   Q. Mr. [Trial Counsel], if we—if you and your client wished to pursue those aggravated robbery cases and give them precedence over the capital murder case, why was no effort made to contact the Court?
   A. I think if you'll review the law, you're going to find that that is not a requirement.
   Q. So you were relying on the statement of your client that he sent these letters to the district attorney's office and simply were not going to do anything further in order to assert a speedy trial claim?
   A. **I was not going to assert a speedy trial claim until I was certain that he had, in fact, been deprived of a speedy trial;** until I was certain that the motion I filed would be upheld either by the trial court or an appellate court based on other law which I had researched. The burden is not on me once I make a prima facie case; the burden is on you.
   ....

   Q. Okay. But the fact of the matter is you did nothing yourself as counsel for Mr. Johnson to obtain a speedy trial for Mr. Johnson other than the filing of now this motion to dismiss?
   ....
   A. ... To answer your question directly in terms of actual motions filed, no, I have not filed a motion up until the [motion to dismiss] last week. (Emphasis added).

2. Our conclusion that Appellant waived his speedy trial right makes it unnecessary to decide whether he adequately asserted that right. Nonetheless, we note that by admitting that he actually delayed complaining of the lack of a speedy trial to allow more time to pass, in an effort to bolster a planned later claim that he was denied a speedy trial, Appellant effectively concedes that his letters were merely an effort to preserve the plausible assertion of the right notwithstanding his actual willingness to endure delay.

result is reliable. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). The second prong of the above test requires that the errors have been so serious that Appellant was deprived a fair trial, which conclusion we must reach if we find a reasonable probability that the results would have been different but for counsel's unprofessional errors. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068; *Wilkerson v. State,* 726 S.W.2d at 548 n. 3.

■■■ The constitutional right to counsel does not mean errorless representation. To meet the constitutional standard, counsel must provide only reasonably effective assistance. *Wilkerson v. State,* 726 S.W.2d at 548. In reviewing assertions of ineffective assistance, we examine the totality of the representation, neither focusing on isolated acts or omissions nor engaging in hindsighted comparisons of how other counsel might have tried the case. *Id.,* at 548. A fair assessment of trial counsel's performance requires that we make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances at trial, and to evaluate the conduct from counsel's perspective at the time of trial. *Stafford v. State,* 813 S.W.2d 503, 506 (Tex.Crim.App.1991). Indeed, we indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that the challenged action could be considered sound trial strategy under the circumstances at the time of trial. *Strickland v. Washington,* 466 U.S. at 688–89, 104 S.Ct. at 2064–65; *Stafford v. State,* 813 S.W.2d at 506. Finally, allegations of ineffective assistance must be firmly founded in the record. *Hawkins v. State,* 660 S.W.2d 65, 75 (Tex. Crim.App.1983); *Mercado v. State,* 615 S.W.2d 225, 228 (Tex.Crim.App.1981).

Initially, we note that neither event on which Appellant predicates his second point of error has obtained. The filing of a motion for speedy trial and the preservation of a witness's testimony are matters related to the substantive analysis of Appellant's speedy trial claim. We never engaged in such an analysis because we did not reach the merits of his claim. We found, rather, that he waived the claim by conceding that he affirmatively desired, albeit for strategic reasons, to be deprived of a speedy trial. His waiver did not result exclusively or even largely from the failure to file a motion for speedy trial or from the failure to diligently attempt to preserve the witness's testimony, although these matters would certainly have been relevant had we reached the merits of the issue. Appellant's waiver resulted merely from his lawyer's admission that he hoped Appellant would be deprived of a speedy trial because it would provide good reason for dismissal.

■■■ Alternatively, we find the omission of which Appellant complains to be the results of a plausible strategic decision by his counsel. Indeed, we need not speculate that such a decision was plausible because the record contains explicit testimony that trial counsel elected not to pursue a speedy trial claim **precisely for strategic reasons.** That counsel's strategy ultimately failed does not control. Although such strategy need not have been particularly sound to meet the constitutional standard, we think it quite reasonable to seek dismissal based on the lack of a speedy trial rather than actually pursue a speedy trial, if only because criminal defendants likely prefer pre-trial dismissal over trial. This conclusion is supported by the results of Appellant's trial, which do much to establish that obtaining speedy trial relief would only have resulted in Appellant's speedy conviction. The presumptively greater value of acquittal aside, trial counsel could have found such action strategically wise for other reasons, such as to allow Appellant's notoriety to fade [3] or to allow the State's

3. We note that the venue for Appellant's trial was changed to Travis County after he moved for such a change, claiming that media attention

prevented him from receiving a fair trial in El Paso. *See* Tex.Code Crim.Proc.Ann. art. 31.03 (Vernon 1989) (providing for change of venue if

evidence to deteriorate. Because of the myriad possible motivations trial counsel could have had for his actions and because of his direct testimony that the decision not to seek speedy trial relief was part of his trial strategy, we conclude that trial counsel's actions are beyond the scope of constitutionally defective assistance. Accordingly, we overrule Appellant's second point of error.

In his third point of error, Appellant argues that the trial court erred by informing the jury of Appellant's prior felony conviction.[4] When prior felony convictions are alleged for purposes of enhancement, the enhancement paragraph generally may not be read to the jury until the punishment phase of trial. Tex.Code Crim.Proc.Ann. art. 36.01(a)(1) (Vernon Supp.1995). Article 36.01 is designed to prevent the prejudice that would inevitably result from "an announcement at the outset of proceedings that the State believes that the defendant was previously convicted of a **particular offense at a particular time and in a particular court."** *Frausto v. State*, 642 S.W.2d 506, 508 (Tex. Crim.App.1982) (emphasis added). To this end, Article 36.01 proscribes informing the jury "of any of the **specific allegations** contained in the enhancement paragraph" of the indictment. *Id.* at 509 (emphasis added). It does not, however, prevent the trial court or the prosecutor from informing the jury in hypothetical terms of the applicable range of punishment if the State proves any prior convictions for enhancement purposes. *Id.;*

*Gentry v. State*, 881 S.W.2d 35 (Tex.App.— Dallas 1994, no pet. h.).

We find the statements to the jury panel by the trial court and prosecutor to be permissible insofar as they merely explained the applicable range of punishment and were couched in the hypothetical. Unlike the statements in *Frausto*, the disputed statements did not specify the date, cause number, or court of Appellant's previous conviction. The statements in the instant case only explained the possible punishments for the charged offense and did not connect Appellant with any **particular** prior conviction whatsoever. Appellant's third point of error is overruled.

In his fourth point of error, Appellant argues that the trial court erred by denying his motion to dismiss for prosecutorial misconduct, claiming that the State failed to produce exculpatory evidence and that it failed to reveal that a police officer witness did not personally speak with the victim of the robbery. After the robbery, the victim provided police with a description of Appellant from which police created a composite sketch. Some two months after the robbery, the victim saw a man he thought to be Appellant while in a bar and summoned police to the scene. Police seized the man for identification by the victim, but released him when the victim realized that the stranger was not Appellant. Among the officers at the bar

---

there exists "so great a prejudice against [the defendant] that he cannot obtain fair and impartial trial...."). His motion contains 42 pages of newspaper articles about Appellant's capital murder trial, all of which identify Appellant by name and several of which include his photograph.

4. In the trial court's opening address to the jury panel, it stated:

The charges brought against Mr. Johnson by the State of Texas are the offense of aggravated robbery. Our law provides that for the offense of aggravated robbery, **if you** are found guilty, you are punishable by confinement in the Texas Department of Corrections for a period of life, or for a period of not more than 99 years or less than five years, and **if found guilty, you** may also be punished by a fine not to exceed $10,000.

Our law further provides that **if it can be shown** on the trial of any felony offense that a

defendant has previously been finally convicted of two felony offenses, and the second previous conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction, **that individual** can be punished by confinement in the Texas Department of Corrections for life or for any term of not more than 99 years or less than 25 years. (Emphasis added).

During the State's voir dire examination, the prosecutor echoed the court's remarks:

The law also says that **if it is shown** on a trial of a first-degree felony that **a defendant** has been before convicted of any felony, on conviction the penalty range is 15 to 99 years, or life, and a fine not to exceed $10,000. Does everybody follow me on that? The penalty range, then, is 15 years to 99 years or life, and a fine not to exceed $10,000. (Emphasis added).

was El Paso Police Sergeant Diane Gil, who did not personally speak with the victim but was informed of events by other officers at the scene.

A photograph of the erroneously identified stranger was introduced into evidence as defense exhibit 2. The composite sketch was introduced as defense exhibit 4 and so identified by the victim. Gil identified exhibit 2 as the stranger, but claimed that exhibit 4 was not the composite sketch she used to compare with the stranger while at the bar. On cross-examination, Gil was unclear whether she may have used the wrong composite sketch and conceded that she may not have remembered events because three and one-half years had passed since the robbery. At the close of Gil's testimony, Appellant asked the State to produce any other composite in the case, and the State responded that no other composite existed.

■■■ The due process clause of the Fourteenth Amendment to the United States Constitution imposes on a prosecutor an affirmative duty to turn over to the accused material, exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Ex parte Kimes*, 872 S.W.2d 700, 702 (Tex.Crim.App.1993). Evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the accused. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *Ex parte Kimes*, 872 S.W.2d at 702. Thus, a due process violation occurs if:

(1) the prosecutor fails to disclose evidence;

(2) the evidence is favorable to the defendant; and

(3) the evidence is material.

*Ex parte Kimes*, 872 S.W.2d at 702. Significantly, *Brady* and its progeny do not require the State to produce exculpatory information that the State does not have in its possession or that is not known to exist. *Hafdahl v. State*, 805 S.W.2d 396, 399 n. 3 (Tex.Crim. App.1990), *cert. denied*, 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991).

■■■ Although Appellant complained about Gil's testimony generally, when asked to specify the legal basis for his objection he did not complain that Gil did not personally speak with the victim, as she had represented in a written report. For an issue to be preserved on appeal, there must be a timely objection that specifically states the legal basis for the objection. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). Specific objections are required so that the trial judge has an opportunity to rule and opposing counsel has an opportunity to remove the objection or supply other testimony. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim. App.1977). An objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac*, 782 S.W.2d at 870. With the exception of the right of trial by jury, a defendant can waive any trial error by failing to properly object or request the proper relief. *Thompson v. State*, 802 S.W.2d 840, 842 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd); Tex.Code Crim.Proc. Ann. art. 1.14 (Vernon Supp.1994). Because Appellant did not specify Gil's failure to disclose that she did not speak with the victim directly, even after the trial court asked Appellant to articulate his precise legal objection, he has waived any error caused by the failure. Accordingly, we overrule his fourth point of error to the extent he relies on Gil's statement to support it.

■■■ With respect to the second alleged composite sketch used to identify Appellant, the record fails to establish that it ever existed. Although Gil was initially committed to the notion that she used a different composite to compare with the stranger, she later admitted that she was not even sure if the item she was referring to was a photograph or a composite. At trial, the prosecutor directly denied the existence of another composite. Because the record fails to reveal that such a composite ever existed, we overrule Appellant's fourth point of error.

■■■ Alternatively, we dispose of Appellant's fourth point of error as it relates to the alleged second sketch by relying on the third prong of the *Bagley* analysis, which requires reversal only if there exists a reasonable probability that the outcome of the trial

would have been different had the evidence been disclosed. Assuming the existence of a second composite, Appellant presumably would have used it to impeach the victim. But this was efficiently and effectively done by testimonial evidence of the victim's erroneous identification of a stranger as Appellant. Any additional impeachment value a second composite could have offered is not so great as to undermine our confidence in the outcome of the trial. Accordingly, we overrule Appellant's fourth point of error.

In his fifth point of error, Appellant claims the trial court erred by allowing the victim to identify Appellant in court as the perpetrator of the crime, claiming that the identification was based on an impermissibly suggestive photographic lineup. At a pre-trial hearing on Appellant's motion to bar such a procedure, the victim testified that during the course of the crime, he had numerous opportunities to observe the robber at distances ranging from three to five feet. He testified that he selected Appellant's photo from the lineup-up because it was a photo of the robber and not because he was aided or guided in selecting it. Significantly, he testified that his in-court identification of Appellant in no way resulted from the photo lineup.

El Paso Police Detective Benito Perez conducted the photo lineup. Although on cross-examination Perez stated that he told the victim that police had a suspect, he testified on redirect that he only told the victim to "[l]ook at the photographic lineup, and see if you recognize anybody, or recognize the person that robbed you." Perez testified that he did not indicate to the victim that he had to select somebody from the lineup. Perez did acknowledge that the victim described the robber as Hispanic and that the shading of Appellant's photo was darker than any of the other five photos. Appellant now complains that the lineup was impermissibly suggestive because Perez told the victim that a suspect was among the photos and because Appellant's photo was darker than the photos of the other men in the lineup.

■■■ A defendant who claims on appeal that a trial court erred by allowing an in-court identification labors under a heavy burden. *Herrera v. State,* 682 S.W.2d 313, 318 (Tex.Crim.App.1984), *cert. denied,* 471 U.S. 1131, 105 S.Ct. 2665, 86 L.Ed.2d 282 (1985). He must demonstrate by clear and convincing evidence that the trial identification was irreparably tainted by an impermissibly suggestive pre-trial identification procedure. *Id.* Such an irreparable taint amounts to a denial of due process. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Evaluation of the complaint involves a two-step process: first, determining whether the pre-trial procedure was impermissibly suggestive; and second, determining whether it resulted in a substantial likelihood of misidentification. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). It is the latter danger that is critical and directly implicates the defendant's due process rights. *Id.* Consequently, if unnecessarily suggestive procedures were employed in advance of trial, a subsequent in-court identification may nonetheless be permitted if the State demonstrates by clear and convincing evidence at the trial level that the pre-trial procedure did not taint the in-court identification and that the testimony was the product of an independent source, namely the observations made at the time of the offense. *Jackson v. State,* 657 S.W.2d 123, 130 (Tex.Crim.App.1983); *Williams v. State,* 477 S.W.2d 885 (Tex.Crim.App.1972). If an independent origin is adequately shown, the impermissible pre-trial procedure does not create a substantial likelihood of misidentification. *Id.; Herrera v. State,* 682 S.W.2d at 318.

■■■ Perez's declarative statement that police "had a suspect" did little to taint the lineup. First, the statement did not directly inform the victim that the suspect's photo was in the lineup. Second, even if it did, it did not render the lineup impermissibly suggestive because a complaining witness normally assumes that a lineup includes a suspect. *Harris v. State,* 827 S.W.2d 949, 959 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *Webb v. State,* 760 S.W.2d 263, 270–73 (Tex. Crim.App.1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989). We

therefore overrule Appellant's fifth point of error to the extent he relies on Perez's statements to support it.

■ We next examine the shading of Appellant's photo. A lineup is not impermissibly suggestive merely because skin tones of the subjects vary. *Buxton v. State,* 699 S.W.2d 212, 216 (Tex.Crim.App.1985), *cert. denied,* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986); *Latson v. State,* 713 S.W.2d 137, 140 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd, untimely filed); *Clay v. State,* 702 S.W.2d 747, 749 (Tex.App.—San Antonio 1985), *pet. ref'd,* 724 S.W.2d 58 (Tex. Crim.App.1987). A lineup should, however, depict persons with similar physical features, including skin color. *Ford v. State,* 794 S.W.2d 863, 866 (Tex.App.—El Paso 1990, pet. ref'd). Their similarities need only be adequate to provide a reasonable test of the witness's capacity to reliably identify the perpetrator. *Id.*

■ Although Appellant has demonstrated that the shading of Appellant's photo was darker than the other photos, he has not established that all six men in the photos were not of the same general skin color. Further, he has not established or even argued that the differences in shading resulted from differences in the subjects, rather than from differences in the quality of the photographs. Given these failures, he has not met his burden to show error.

Finally, and alternatively, even if the lineup itself was impermissibly suggestive, Appellant has failed to demonstrate by clear and convincing evidence that the victim's in-court identification of Appellant was irreparably tainted by the prior lineup. The victim maintained that his in-court identification was in no way based on the prior lineup, but on his observation of Appellant during the robbery. This does much to establish that the victim's in-court identification had an independent source. Accordingly, we overrule Appellant's fifth point of error.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.