Opinion issued October 2, 2003






















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-01133-CR
____________
 
DELBERT LEE BURKETT, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from County Criminal Court of Law No. 14
Harris County, Texas
Trial Court Cause No. 1115675
 

 

O P I N I O NA jury found appellant, Delbert Lee Burkett, guilty of indecent exposure and
assessed punishment at confinement for 74 days. In his sole point of error, appellant
contends that the trial court erred in admitting pretrial and in-court identification
evidence against him in violation of his constitutional rights to due process.


 We
affirm. 
Facts and Procedural Background
          Ellen West, the complainant, testified that on April 28, 2002, at about 11:40
a.m., she was in the parking lot of a grocery store. As she was putting groceries into
her car, she heard a man say something to her. When she turned around to look, she
saw appellant seated in the driver’s side of a gray Cadillac parked next to her car. 
Although appellant was wearing a hat, she saw that he was naked and masturbating. 
The complainant saw appellant’s genitals and looked at appellant for 15 to 20
seconds, “paying a lot of attention to his face” and noticing that appellant had
“distinctive” eyes. She memorized appellant’s license plate number and several
bumper stickers on the back of his car. The complainant drove home and reported the
incident to the Harris County Constables Office, Precinct 4.
          Harris County Deputy Constable B. Pantoja testified that, 11 days after the
incident, he showed the complainant a photographic array containing a photograph
of appellant and photographs of five other men. Pantoja saw the complainant identify
appellant in “under a minute” as the man that she saw masturbating in the gray
Cadillac on April 28, 2002. Pantoja then told the complainant that she had “a good
memory.”
          Appellant filed a motion to suppress the complainant’s pretrial and in-court
identifications of him as the perpetrator of the offense. In the pretrial suppression
hearing, the complainant testified that she described the perpetrator to the Constable’s
office as a white male between 45-50 years of age, approximately six feet tall, with
dark frizzy hair and a mustache. She stated that Deputy Constable Pantoja told her
that he had identified a suspect in the case and that the suspect was in one of the six
photographs in the array. She then “looked at all the pictures and picked him out
straightaway.” The trial court denied appellant’s motion and admitted all of the
above testimony at trial.
Identification
          Appellant argues that the trial court erred in “admitting into evidence a pretrial
identification that was conducted in an overly suggestive procedure” and an “in-court
identification” that was “tainted” by the pretrial identification.
          The standard of review on a claim that an in-court identification should not
have been admitted due to the taint of an impermissibly suggestive pretrial
identification procedure is set forth in Loserth v. State, 963 S.W.2d 770 (Tex. Crim.
App. 1998). Our standard of review depends upon the type of question presented to
the reviewing court. Id. at 772. First, as a general rule, we must give almost total
deference to a trial court’s determination of historical facts supported by the record,
especially when the trial court’s fact findings are based on an evaluation of the
credibility and demeanor of the witnesses. Id. Second, we give the same amount of
deference to the trial court’s rulings on “application of law to fact questions,” also
known as “mixed questions of law and fact,” if the resolution of those questions turns
on an evaluation of credibility and demeanor. Id. Finally, we review de novo “mixed
questions of law and fact” that do not fall within the second category. Id. In this
case, the question of whether an identification procedure was so impermissibly
suggestive as to give rise to a very substantial likelihood of misidentification is a
mixed question of law and fact that does not turn on an evaluation of credibility and
demeanor. Id. at 772-73. Accordingly, we apply a de novo standard of review.
          A pretrial identification procedure may be so suggestive and conducive to
mistaken identification that subsequent use of that identification at trial would deny
the accused due process of law. Simmons v. United States, 390 U.S. 377, 384, 88 S.
Ct. 967, 971 (1968); Barley v. State, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995). 
We apply a two-step analysis to determine the admissibility of an in-court
identification and ask (1) whether the pretrial identification procedure was
impermissibly suggestive and, if so, (2) whether the improperly suggestive procedure
created a very substantial likelihood of irreparable misidentification. Simmons, 390
U.S. at 384, 88 S. Ct. at 971; Barley, 906 S.W.2d at 33. A defendant bears the
burden of establishing by clear and convincing evidence that the pretrial
identification procedure was impermissibly suggestive. Barley, 906 S.W.2d at 33-34. 
Furthermore, the analysis requires an examination of the totality of the circumstances
surrounding the identification. Id. at 33.
          If a court finds that a pretrial identification procedure was impermissibly
suggestive, it must then consider the factors enumerated in Neil v. Biggers to
determine whether the suggestive procedure gave rise to a substantial likelihood of
irreparable misidentification. 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972). These
non-exclusive factors are: (1) the witness’s opportunity to view the criminal, (2) the
witness’s degree of attention, (3) the accuracy of the witness’s description of the
suspect, (4) the level of certainty at the time of confrontation, and (5) the time
between the crime and confrontation. Id. We treat these five factors as issues of fact
and review them in the light most favorable to the trial court’s ruling. Ibarra v. State,
11 S.W.3d 189, 195-96 (Tex. Crim. App. 1999). The five factors, viewed in this
light, are then reviewed de novo against “the corrupting effect” of the suggestive
pretrial identification procedure. Id.; Loserth, 963 S.W.2d at 773-74.

Impermissibly Suggestive Procedure
          Appellant asserts that the photographic array was impermissibly suggestive
because he was the only one pictured in the array who resembled the description given
by the complainant to the Constable’s office. Appellant argues that the pretrial
identification procedure was the equivalent of showing the complainant only one
photograph, which Texas courts have found to be impermissibly suggestive. See Delk
v. State, 855 S.W.2d 700, 707 (Tex. Crim. App. 1993). Appellant also complains that
Deputy Constable Pantoja told the complainant that a suspect was included in the
photographic array and, after she identified appellant, that she had “a good memory.”
          Suggestiveness may be created by the manner in which a pretrial identification
procedure is conducted. Barley, 906 S.W.2d at 33. For example, a police officer may
point out the suspect or suggest that a suspect is included in a lineup or photographic
array. Id. Also, the content of a lineup or photographic array itself may be suggestive
if the suspect is the only individual who closely resembles the description given by the
witness. Id. Furthermore, an individual procedure may be suggestive or the
cumulative effect of procedures may be suggestive. Id.
          In regard to the content of the photographic array, all of the men pictured in the
array are caucasian, have mustaches, are wearing civilian clothes, and appear to be
similar in age. One man in the array appears to have light brown or blonde hair, while
the other men, including appellant, have dark hair. Although every photographic array
must contain photographs of individuals who fit the rough description of the suspect,
it is not essential that all individuals be identical in appearance. Buxton v. State, 699
S.W.2d 212, 216 (Tex. Crim. App. 1985). Neither due process of law nor common
sense requires such exactitude. Giesberg v. State, 945 S.W.2d 120, 125-26 (Tex.
App.—Houston [1st Dist.] 1996, pet. ref’d). Accordingly, we hold that the content of
the photographic array was not impermissibly suggestive.
          Nor do we find that the manner in which the pretrial identification procedure
was conducted was impermissibly suggestive in regard to the complainant’s pretrial
identification. It is true that Deputy Constable Pantoja told the complainant that he
had identified a suspect and that the suspect was one of the six men pictured in the
photographic array. It is also true that, after the complainant identified appellant in
the photographic array, Pantoja told her that she had “a good memory.” However,
neither of these facts are dispositive in this case. Pantoja’s disclosure that a suspect
was included in the photographic array did not itself render the pretrial identification
impermissibly suggestive because a complaining witness normally assumes that a
photographic array includes a suspect. See Johnson v. State, 901 S.W.2d 525, 534
(Tex. App.—El Paso 1995, pet. ref’d). Additionally, Pantoja’s comment that the
complainant had “a good memory” did not render the pretrial identification
impermissibly suggestive because the complainant had already identified appellant
before Pantoja made the statement. We recognize that, in some situations, a police
officer’s comment that a witness has “a good memory” following an identification may
render that identification impermissibly suggestive. Here, however, the record reveals
that the complainant identified appellant in the photographic array “straightaway.” 
Her identification was immediate and without hesitation. Appellant has not
demonstrated, by clear and convincing evidence, that the manner in which the pretrial
identification procedure was conducted was impermissibly suggestive as to the
complainant’s pretrial identification. Accordingly, we hold that the trial court did not
err in admitting into evidence the complainant’s pretrial identification of appellant as
the perpetrator of the offense.
          While there is not clear and convincing evidence that Deputy Constable
Pantoja’s comment affected the complainant’s pretrial identification of appellant, we
recognize that such a comment could possibly influence a subsequent in-court
identification. Accordingly, we now examine, under the totality of the circumstances,
whether Pantoja’s comment that the complainant had “a good memory” was so
suggestive that it gave rise to a very substantial likelihood of irreparable in-court
misidentification.

Likelihood of Irreparable In-Court Misidentification
          In analyzing the issue of irreparable misidentification, we look to the five
Biggers factors for guidance. We consider the factors as issues of fact and review
them in a light favorable to the trial court’s ruling. Loserth, 963 S.W.2d at 773. 
Reliability is the “linchpin” in determining admissibility of such identification
testimony. Barley, 906 S.W.2d at 34. If sufficient indicia of reliability outweigh
suggestiveness, then an identification is admissible. Id. A defendant must show by
clear and convincing evidence that the identification has been irreparably tainted. Id.
          Applying the Biggers factors, we note that, first, the complainant had an
adequate opportunity to view the perpetrator at the time of the offense. The record
reveals that the complainant had a clear view of the perpetrator in a car parked “right
next” to her car, and “the lighting [at 11:40 a.m.] was good.” The complainant
testified that she “got a good look at [appellant]” for about 15 to 20 seconds. 
          Second, the complainant testified that she “paid a lot of attention to [the
perpetrator’s] face.” The record further demonstrates the complainant’s attentiveness
as evidenced by her ability to describe the perpetrator and his car and to memorize the
car’s license plate number and certain bumper stickers on the back of the car. The
complainant also testified that the perpetrator was “distinctive” to her “because of his
eyes.” 
          Third, the record reveals that, before the complainant viewed the photographic
array, she described the perpetrator in detail as a white male, approximately six feet
in height, with dark frizzy hair and a mustache, and being approximately 45-50 years
of age. However, appellant notes that during the identification suppression hearing,
he removed his shirt and revealed that he has extensive tattoos on his arms and chest. 
He also revealed that he is missing several front teeth. Appellant argues that such a
“jarring contrast” between the complainant’s ability to remember only his face “shown
by the police photograph, compared with her total inability to describe his chest and
arms until after he removed his shirt, is clear and convincing evidence that the
suggestive photo ID procedure gave rise to a very substantial likelihood of irreparable
harm during his trial.” We disagree.
          Although the complainant admitted that she did not “recall” any tattoos on the
perpetrator’s body or whether he was missing front teeth, she testified that, at the time
of the offense, she did not “pay attention” to the perpetrator’s chest or arms because
she “paid attention to his face and what he was doing.” The complainant was shocked
and “embarrassed” by the perpetrator’s actions, and she focused on his face and
noticed that he had “distinctive” eyes. The fact that the complainant did not notice the
appellant’s tattoos and his missing teeth does not detract from the accuracy of her
description given prior to viewing the photographic array.
          Fourth, the record shows that the level of the complainant’s certainty as to her
identification of appellant was consistently high. When the complainant was shown
the photographic array, she identified appellant as the perpetrator immediately and
without hesitation. She also unequivocally identified appellant as the perpetrator of
the offense during the identification suppression hearing and at trial. 
          Finally, the record reveals that the complainant positively identified appellant
in court, six months after the offense. Such a passage of time did not detract from the
complainant’s identification in this case because of her consistent testimony and
ability to recall details. See Delk, 855 S.W.2d at 708. Moreover, the complainant
testified that her in-court identification of appellant was based on what she had
observed on the day of the offense, and not on her observation of the photographic
array.
          We conclude that all five Biggers factors, under the totality of the
circumstances, support the trial court’s decision to admit the complainant’s in-court
identification of appellant as the man that she saw masturbating in the gray Cadillac
on April 28, 2002. Weighing this evidence of reliability against any possible
corrupting effect of Deputy Constable Pantoja’s comment that the complainant had “a
good memory,” we conclude that no substantial risk of irreparable misidentification
was created. Accordingly, we hold that the trial court did not err in admitting into
evidence the complainant’s in-court identification of appellant as the perpetrator of the
offense.
          We overrule appellant’s sole point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Taft, Jennings, and Hanks.
 
Publish. Tex. R. App. P. 47.2(b).