Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





ODIS RUSHING,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-05-00365-CR



Appeal from


Criminal District Court No. 2


of Dallas County, Texas


(TC # F-0548440-I)




O P I N I O N



 Odis Rushing appeals his conviction of aggravated robbery, enhanced with a prior 
aggravated robbery conviction. After the jury found him guilty, Appellant entered a plea of true to
the enhancement allegation. The jury found the enhancement allegation true and assessed
Appellant's punishment at imprisonment for a term of sixty-seven years. The trial court also entered
a deadly weapon finding in the judgment. We affirm.

FACTUAL SUMMARY


 On January 17, 2005, Nell Brown was waiting for a bus after buying groceries at the
Albertson's on the corner of McKinney and Lemmon in Dallas. She was walking back and forth
because it was cold that day. A black man approached her and asked what time the next bus would
arrive. She answered, "In about ten minutes." As she turned and faced the man, she saw that he was
holding a knife with a three to four inch blade, and he demanded her purse. She handed him her
billfold and he ran away across a parking lot. Because the billfold contained $100 in cash, a debit
card, and identification, Brown began chasing after him while yelling, "He's got my billfold!" As
she chased the robber, Brown saw another young man talking on a cell phone in the parking lot and
she later learned that he called 911. The robber got into a car and sped away from the scene. Brown
was later shown a photo lineup but she was unable to positively identify any of the men as the man
who robbed her. Although Appellant looked similar to the man who robbed her, she was also unable
to make an in-court identification.

 Marcus Johnson, a student at Parker College of Chiropractic, was in the parking lot at
Albertson's when he saw a black man running towards him. Johnson saw that the man was being
followed by a woman who was obviously upset and frantic. Johnson heard her say, "My purse" and
he again looked at the man who was still running towards him. Johnson thought about intervening
but backed off when he saw a knife "flash out from underneath his shirt." He recalled that the man
was wearing a dark blue jacket and the knife blade was about four inches in length. Johnson
identified State's Exhibit 3, a photograph of a dark blue jacket, as the jacket worn by the robber. He
watched the man run past him and get into the driver's seat of a blue Hyundai that was backed into
a parking spot. The car started quickly and then "burned out" of the parking lot with its tires
squealing. Johnson got the vehicle's license plate and called 911. He had a good look at the man's
face as he ran towards him and when he got into the car. Based on his memory of these events,
Johnson made an in-court identification of Appellant as the man he had seen in the Albertson's
parking lot running from Nell Brown. Johnson also recalled that the police contacted him several
hours after the robbery and showed him a photo lineup at approximately 2:30 a.m. He signed the
back of the photograph that he thought was the suspect. He based his identification solely on facial
features, not on any other distinction such as different clothing or background colors.

 At approximately 4:30 p.m. on January 17, 2005, Corporal John Nichols of the Dallas Police
Department began his off-duty security job at Albertson's. Approximately one minute after he
arrived, Nichols heard the robbery dispatch and he began looking around the premises to find the
witnesses. Nell Brown was waiting in the store's witness room and Nichols could see that she was
visibly shaken. He began gathering information from Brown while they waited for a patrol officer
to arrive. As he spoke with her, Nichols realized that he had seen the vehicle used in the robbery as
he drove into the parking lot. Nichols reviewed the videotape from the store's security cameras and
found footage of a small, dark-colored vehicle. The video quality was poor but he was able to see
a figure exit the vehicle and walk over to where Brown was waiting at the bus stop. Within ten
seconds, the figure ran back to the vehicle with another person in pursuit. He jumped into the car
and drove away. The video was not preserved for trial but Nichols printed two stills off of it in the
hope that something in the photos might be recognizable. However, the picture quality was so poor
that he was unable to get a license plate number or identify the individual depicted in the video. 

 Police officer Juan Aguinaga was on duty during the evening of January 17, 2005. He had
received over his computer the license plate and a description of a dark blue 2000 four-door Hyundai
vehicle used in an armed robbery. At approximately 11:45 p.m., Aguinaga saw a the vehicle
matching the description and license plate and he stopped it. Because he was making a felony stop,
Aguinaga asked for cover and several patrol cars responded. The officers arrested the driver of the
vehicle, Appellant, and detained the passenger, Louis Leonard.

 Police officer Mark Anthony Torres responded to Aguinaga's request for backup. As
Appellant exited the vehicle, Torres saw him drop something on the ground. After Appellant was
secured, Torres picked up the item which Appellant had dropped and saw that it was a driver's
license issued to Nell Marie Brown. Torres also searched the center console of the vehicle and found
a checkbook and a Visa check card both bearing Nell Brown's name. He also found some knives. 
 Jessie Woods, a Dallas Police Officer, also responded to Aguinaga's request for cover. 
Woods searched Appellant's person following his arrest and found a Bank of America debit card
bearing the name of Nell Brown. Appellant was wearing a dark blue jacket at the time of his arrest
and a photograph of the jacket was admitted into evidence as State's Exhibit 3. The jacket was also
admitted into evidence.

 Detective William Brook Smith presented two photo line-ups to the complainant, Nell
Brown. One lineup contained Appellant's photograph and the other lineup contained the photograph
of Leonard. Brown was unable to identify either man. Smith also showed Johnson the photo lineup
containing Appellant's photograph. When Johnson positively identified Appellant as the man he
saw running from Brown earlier that day, Smith did not show him Leonard's photograph. 

FACTUAL SUFFICIENCY


 In Issue One, Appellant challenges the factual sufficiency of the evidence supporting his
conviction. More specifically, he argues that the photographic array shown to Johnson tainted his
in-court identification of Appellant.

 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing
our review, we are to give due deference to the fact finder's determinations. See id. at 8-9; Clewis,
922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe
all, some, or none of the testimony." Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App.
1991). Evidence is factually insufficient if it is so weak that it would be clearly wrong and
manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and
preponderance of the available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we
must consider in conducting a factual sufficiency review is whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the fact finder's determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. See id. Under the first prong of
Johnson, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply
because, on the quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of
Johnson, we cannot declare that a conflict in the evidence justifies a new trial simply because we
disagree with the jury's resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of the evidence
contradicts the jury's verdict. Id.

 Identification of the defendant as the person who committed the offense charged is an
element of the offense which the State must prove beyond a reasonable doubt. Miller v. State, 667
S.W.2d 773, 775 (Tex.Crim.App. 1984). The identity of a perpetrator may be proven by either direct
or circumstantial evidence. Roberson v. State, 16 S.W.3d 156, 167 (Tex.App.--Austin 2000, pet.
ref'd); Couchman v. State, 3 S.W.3d 155, 162 (Tex.App.--Fort Worth 1999, pet. ref'd), citing Earls
v. State, 707 S.W.2d 82, 85 (Tex.Crim.App. 1986).

 While Brown did not make either an out-of-court or in-court identification, Johnson
identified Appellant in a photo lineup as the person he saw running from Brown. Johnson also made
a positive in-court identification of Appellant. Appellant contends that Johnson's in-court
identification of Appellant was tainted because the photo array was impermissibly suggestive.

 A pretrial identification procedure may be so suggestive and conducive to mistaken
identification that subsequent use of that identification at trial would deny the accused due process
of law. Conner v. State, 67 S.W.3d 192, 200 (Tex.Crim.App. 2001), citing Stovall v. Denno, 388
U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). We utilize a two-step analysis to determine the
admissibility of an in-court identification: (1) whether the out-of-court identification procedure was
impermissibly suggestive; and, if suggestive, (2) whether that suggestive procedure gave rise to a
substantial likelihood of irreparable misidentification. Conner, 67 S.W.3d at 200, citing Simmons
v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). An analysis under these steps
requires an examination of the "totality of the circumstances" surrounding the particular case and
a determination of the reliability of the identification. Id.

 Appellant argues that the photo lineup was impermissibly suggestive because he was the only
person in the lineup with his distinctive facial features, a long nose and high cheekbones. Neither
due process nor common sense requires that the individuals in a lineup exhibit features exactly
matching the accused. Turner v. State, 600 S.W.2d 927, 933 (Tex.Crim.App. 1980); Colgin v. State,
132 S.W.3d 526, 532 (Tex.App.--Houston [1st Dist.] 2004, pet. ref'd). Rather, a photo array must
contain individuals who fit a rough description of the suspect. Wilson v. State, 15 S.W.3d 544, 553
(Tex.App.--Dallas 1999, pet. ref'd). A photographic spread should depict persons of the same race,
general skin color, age, and height as the suspect. Id. There is no standard as to the similarities
required of the subjects used in a pretrial identification procedure, only that there not be a likelihood
of irreparable misidentification. Id. The mere fact that lineup participants do not perfectly match
the physical description of the accused does not render a lineup impermissibly suggestive. Id.

 Detective Smith testified that he chose the photographs used in the lineup based on
similarities in appearance to Appellant. The appellate record contains a copy of the photographs
used in the lineup. While none of the other subjects looks exactly like Appellant, the individuals
depicted in the array are of the same race, general skin color, age, and height. We conclude that the
photo array was not impermissibly suggestive, and did not constitute an unfair lineup. See Wilson,
15 S.W.3d at 553. Because we have found that the pretrial identification procedures were not
impermissibly suggestive, we need not address whether those procedures created a substantial
likelihood of misidentification. See Webb v. State, 760 S.W.2d 263, 269 (Tex.Crim.App. 1988).

 In addition to Johnson's pretrial and in-court identification of Appellant, there is other
evidence establishing Appellant's identity as the robber. Johnson provided the police with a
description of the vehicle and its license plate number. Appellant was found driving the vehicle a
few hours later with the complainant's debit card in his pocket. One police officer at the scene of
Appellant's arrest saw him drop the complainant's driver's license to the ground as he exited the
vehicle. Other items taken from the complainant during the robbery and a knife similar to the one
used in the robbery were found in the center console of the vehicle. Johnson also identified the
jacket Appellant was wearing at the time of his arrest as being the jacket worn by the robber. Having
conducted a neutral review of all the evidence, we are unable to conclude that the proof of
Appellant's guilt is so obviously weak as to undermine confidence in the jury's determination that
he committed the offense. Issue One is overruled.

VOIR DIRE


 In Issue Two, Appellant complains that the prosecutor effectively informed the jury that
Appellant had a prior conviction when he informed the panel during voir dire that probation was not
an issue in the case. During voir dire, the prosecutor said that aggravated robbery is a first degree
felony and the range of punishment is ordinarily imprisonment for a minimum of five years to a
maximum of 99 years or life. He mentioned that if a certain evidentiary showing is made, the
minimum sentence might be fifteen years. The prosecutor then ascertained the ability of the
veniremembers to consider the full range of punishment, taking into account the two potential
minimum sentences. Near the close of the State's voir dire, the prosecutor informed the panel that
probation was not an issue and inquired whether anyone would have a problem sitting as a juror in
an aggravated robbery case where probation could not be given. The trial court overruled
Appellant's objection and denied his request for a mistrial. During voir dire by the defense, a
potential juror stated that "there is some kind of history" because the jury had been told that
"[p]robation is not an option." In response, defense counsel countered that "nobody said there was
a history." He reiterated that the attorneys could not talk about the facts of the case before the
evidence was presented and that what the attorneys said was not evidence.

 The State cannot read the enhancement portion of the indictment before the punishment
hearing. Tex.Code Crim.Proc.Ann. art. 36.01(a)(1)(Vernon 2007). Nor may the State give the
specifics of the prior offenses as this is tantamount to reading the allegations. Frausto v. State, 642
S.W.2d 506, 509 (Tex.Crim.App. 1982). Article 36.01 is designed to prevent the prejudice that
would inevitably result from "an announcement at the outset of proceedings that the State believes
that the defendant was previously convicted of a particular offense at a particular time and in a
particular court." Johnson v. State, 901 S.W.2d 525, 532 (Tex.App.--El Paso 1995, pet. ref'd),
quoting Frausto, 642 S.W.2d at 508. But Article 36.01 does not prevent the trial court or the
prosecutor from informing the jury in hypothetical terms of the applicable range of punishment if
the State proves any prior convictions for enhancement purposes. Frausto, 642 S.W.2d at 509;
Johnson, 901 S.W.2d at 532. Both the State and the accused have the right to inform the venire of
the range of punishment applicable to an enhanced offense under Section 12.42(a), (b) or (c), and
to qualify it on the full range of punishment. Frausto, 642 S.W.2d at 509.

 The prosecutor clearly stayed within the bounds of Frausto in his comments regarding the
minimum range of punishment "bumping up" to fifteen years in the event an unspecified evidentiary
showing was met. The prosecutor's comment that "probation is not an issue" did not violate Article
36.01 or exceed what is permissible under Frausto because, even assuming that the potential jurors
would necessarily have understood that probation was unavailable because Appellant had a prior
conviction, it did not inform the jury of the specifics of the prior conviction. Issue Two is overruled. 
Having overruled both issues, we affirm the judgment of the trial court.


August 23, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)